## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

NÉLIDA RAMOS SANTOS,

     Plaintiff,

         v.                         CIVIL NO.: 11-1105 (FAB)

HERNÁNDEZ RODRÍGUEZ, et. al.,

     Defendants.

## REPORT AND RECOMMENDATION

On January 17, 2011, Nélida Ramos Santos ("Ramos" or "plaintiff") filed a complaint against her employer, the "Cuerpo de Bomberos de Puerto Rico" (the Puerto Rico Fire Department, translation ours) ("PRFD"), as well as PRFD employees Jeremías Hernández Nogueras ("Hernández"), Carmen Rodríguez Díaz ("Rodríguez"), and the Commonwealth of Puerto Rico (the "Commonwealth"), and several unnamed defendants (collectively, "defendants"), alleging violations of her First and Fourteenth Amendment rights via 42 U.S.C. § 1983 ("Section 1983"), Title VII of the Civil Rights Act of 1964 ("Title VII"), Federal and Commonwealth whistleblower laws, and Commonwealth anti-discrimination laws, specifically, Law No. 100 of June 30, 1959, Law No. 69 of July 6, 1985, and Law No. 115 of December 20, 1991.  (Docket No. 1).[1]  Pending before the court are two motions to dismiss, one filed by the Commonwealth, the PRFD, and Rodríguez (Docket No. 23) and a second filed by Hernández. (Docket No. 24).  Also pending before the court is Rodríguez's unopposed motion in her personal

---

[1] On February 5, 2011, plaintiff filed an amended complaint alleging the same causes of action.  (D.E. 5).  On September 15, 2011, plaintiff filed a second amended complaint for the sole purpose of correcting an inaccurate legal citation.  (D.E. 67; see D.E. 70).  Although the second amended complaint was filed after the motions to dismiss, this Report and Recommendation refers to the second amended complaint because it contains no substantive changes.

capacity claiming that she is entitled to qualified immunity.  (Docket No. 36).[2]  Plaintiff filed a response in opposition to the two motions to dismiss (Docket No. 31) and the Commonwealth and PRFD have filed a reply.  (Docket No. 35).

## I.   FACTUAL BACKGROUND

The court draws the following factual allegations from plaintiff's second amended complaint (Docket No. 67) and treats them as true for the purposes of the pending motion:

Plaintiff is a career employee with the Commonwealth who has worked for the PRFD since 1988.  (¶ 11).  She began working there as an accountant and, in 1994, was assigned to the Emergency Medical Corps, where she was later promoted to Director of Budget Finance.  (¶¶ 22-23).  She held this position until April 2009, when she was offered an opportunity to serve as Special Assistant to the chief of the PRFD by Coronel Benjamín Rodríguez , who later appointed plaintiff as interim Director of Purchasing and Supply.  (¶¶ 26, 28).  In September 2009, plaintiff was appointed Assistant Chief of Administration.  (¶ 29).  In March 2010, co-defendant Rodríguez was selected as chief of the PRFD and appointed plaintiff as Head of the Administration of the PRFD.  (¶ 29).

At some time prior to July 2010, co-defendant Hernández was appointed Transportation Director of the PRFD and assigned to the same office building as plaintiff.  (¶ 31).  After being introduced to plaintiff, Hernández began what plaintiff describes as "a constant pattern of flirtatious remarks, constant invitations to go out to lunch, constant phone calls to her office, winks, and very frequent visits to plaintiff's office seeking help in matters that he himself could

---

[2] On May 27, 2011, three days after Rodríguez filed her motion for qualified immunity, plaintiff moved the court for an extension until June 6, 2011 to file her response in opposition.  (D.E. 43).  The court granted the requested extension (D.E. 45); however, plaintiff did not file a response by June 6th, or at any time thereafter.

easily resolve." (¶ 31).[3]  Plaintiff's complaint does not describe any of these alleged flirtations,

nor does she recount any of the specific remarks that Hernández allegedly made.  Plaintiff states

that she rejected these "advances," but that they continued throughout the summer of 2010.  (¶

32).

During mid-July of 2010, both plaintiff and Hernández attended a LULAC[4] convention in

New Mexico, which agency personnel were encouraged and asked to attend.  (¶¶ 32-35).[5]  On

July 13, 2010, prior to leaving for the convention, plaintiff received a telephone call from

Manolo Fontán ("Fontán"), a service manager from Guaraguao Truck Sales, a supplier for the

PRFD, informing her that Hernández had asked Fontán to provide $5,000.00 to cover the cost of

the PRFD's employees' tickets to New Mexico for the LULAC convention.  (¶ 33).  Fontán

stated that he only had sufficient funds to pay for one round-trip plane ticket, and he sent a check

"in the name of Condado Travel" to the PRFD's headquarters.  (¶ 33-34).  The complaint does

not describe plaintiff's response, if any, to Fontán.  Plaintiff received the check at some

unspecified time after her conversation with Fontán.  When she did so, she quickly informed

Rodríguez "of the illegality of the check."  Plaintiff asked Rodríguez what she should do with the

check, to which the latter responded "pay [for] the plane ticket and I will take care of returning

the money later.  This Jeremías is really something asking for money." (¶ 34).

On July 16, 2010, plaintiff, Hernández, and other PRFD employees were at the hotel pool

in New Mexico, where they were staying during the LULAC convention.  Hernández told

---

[3] Plaintiff does not specify when she and Hernández were introduced and thus when the behavior described began. Because the complaint mentions July 2010 as the only date surrounding these events, it can only be inferred that the behavior began sometime around July 2010.

[4] The complaint does not define or explain what LULAC is.  Although in at least one other case it has been used to refer to the League of United Latin American Citizens, which is "a not-for-profit organization dedicated to the advancement of the Hispanic population in the United States," see League of Latin American Citizens v. Bredesen, 500 F.3d 523, 526 (6th Cir. 2007), the court will not speculate or assume such fact.

[5] The complaint does not indicate the exact dates of the convention, but mentions that one of the incidents that happened at the convention (discussed below) occurred on July 16, 2010.  (¶ 35).

plaintiff to be careful with a PRFD captain named Luis Cotto whom he called "that Popular," which plaintiff characterizes as a comment that "show[ed] a patent discrimination for political reasons." (¶¶ 35-36). This made plaintiff feel uncomfortable, so she retired to her hotel room. (¶ 36). An hour later, she received a call from defendant inquiring if she was upset with him. (¶ 36). Plaintiff responded that she had not given Hernández any reason to feel like he could call her hotel room, and she told him to refrain from calling her. (¶ 37). At around midnight that same evening, Hernández called plaintiff again and said he was lonely and asked her if she would like to go up to his room to spend some time together. (¶ 37). He also told her "in an excited manner that what he had for her was big and fat, referring to his penis, that she would like it, that he was crazy about giving her a kiss and that one of these days he would steal one from her." (¶ 38).

At unspecified times during the convention, Hernández commented to other members of their group that he was plaintiff's "bodyguard" and so he had to be near her because he was assigned to this "mission." (¶ 39). Plaintiff told him to stop making such comments, as she had a partner. (¶ 40). Hernández also asked plaintiff more than once about her marital status and told her that Rodríguez had informed him several times that plaintiff was married. (¶ 40). Plaintiff told Hernández that he had no need to ask such questions and that she was not going to answer them. (¶ 40).

On August 16, 2010, Hernández prepared a complaint against plaintiff alleging sexual harassment, with assistance from PRFD general counsel, Efrén González. (¶ 41).[6] The next day Hernández stated to plaintiff that she seemed different since he had refused her repeated requests to go to her room at the LULAC convention because "he was a man faithful to his family and

---

[6] The complaint does not indicate whether it was an internal complaint with the PRFD, an EEOC complaint, or another type of administrative complaint.

God." (¶ 41). He alleged that as a result of his refusal, plaintiff would not talk to him and would not process papers and matters related to his work area. (¶ 42). Between August 23 and September 14, 2010, Hernández complained to Rodríguez, claiming that plaintiff was incompetent and failing to perform her duties. (¶ 43).[7]

On September 14, 2010, plaintiff filed an administrative complaint against Hernández alleging sexual harassment and acts of retaliation. (¶ 44).[8] On September 29, 2010, Rodríguez told plaintiff "that she was being demoted to a lower rank position." (¶ 45). That same day, plaintiff was excluded from a meeting she usually would attend. Id. The next day, plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC"), alleging sexual harassment and acts of retaliation for having complained of improper behavior related to the handling of financial matters by a fellow co-worker. (¶ 46).

Between October 1 and December 27, 2010, "defendants gradually . . . demoted [plaintiff] and withdrew [her] work functions." (¶ 47). Additionally, plaintiff was moved to a different office that did not have a working air conditioner, her office chair was damaged, she was refused internet access, she was not allowed to use assigned parking, and she had to mop the floor in her office because it was dirty and unhealthy. (¶ 47). During this same time period, when plaintiff encountered Hernández in hallways, stairways and other general office building spaces, he looked at her "with menacing and threatening demeanors [sic]." (¶ 48). Plaintiff states that this demeanor caused her "severe paranoia, nervousness, fear and extreme

---

[7] Plaintiff alleges that at the time of Hernández's complaints to Rodríguez, the latter "had already received plaintiff's complaints regarding the harassment sexual harassment [sic] and improper financial dealings and incidents perpetrated by Hernández." (¶ 43). This allegation, in part, directly contradicts other parts of the complaint. The complaint states that plaintiff filed an administrative complaint against Hernández on September 14, 2010 (¶ 44), and an EEOC complaint on September 30, 2010, while Hernández's alleged complaints to Rodríguez occurred between August 23, 2010 and September 14, 2010. (¶ 43, ¶ 46). The complaint contains no specific factual allegations of complaints by plaintiff to Rodríguez prior to the filing of her administrative complaint in September.

[8] Once again, the complaint does not indicate with whom the "administrative complaint" was filed. However, it can be inferred that it was not an EEOC complaint, because plaintiff alleges that she later filed an EEOC complaint on September 30, 2010. (¶ 46).

discomfort." Id. (¶ 48).  Plaintiff also states that she was asked to leave the agency,[9] but does

not allege that she was in fact discharged or constructively discharged; rather, she is still

employed at the PRFD.  (¶¶ 11, 49).  While plaintiff alleges that she was demoted, she does not

indicate the position to which she was demoted and thus currently occupies.  Moreover, the

complaint fails to allege which work functions in particular she is now not allowed to perform

and whether her salary has been reduced.

## II.   STANDARD OF REVIEW

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6),

the court must limit its focus to the allegations of the complaint.  Litton Indus., Inc. v. Colón, 587

F.2d 70, 74 (1st Cir. 1978).  The inquiry is whether the allegations, accepted as true, show "a

plausible entitlement" to the relief requested.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 559

(2007).  To avoid dismissal, a third-party plaintiff must "set forth factual allegations, either direct

or inferential, regarding each material element necessary to sustain recovery under some

actionable legal theory."  Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988).

Determining whether a complaint makes out a plausible entitlement to relief involves two

steps.  See Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 11-12 (1st Cir. 2011) (citing

Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1950 (2009)).  First, the court should separate a

complaint's factual allegations from any "legal conclusions couched as fact or threadbare recitals

of the elements of a cause of action," and disregard the latter.  Id. at 12 (quoting Iqbal, 129 S. Ct.

at 1949-50) (internal quotations omitted).  The court then treats non-conclusory factual

allegations as true, "even if seemingly incredible."  Id.  Second, the court must determine if the

factual content, taken as a whole, admits of "the reasonable inference that the defendant is liable

---

[9] She does not indicate who asked her to leave the agency.

for the misconduct alleged." Id. (quoting Iqbal, 129 S. Ct. at 1949).  Only if it does will the complaint survive a motion to dismiss under Rule 12(b)(6).  See id.

### III.   ANALYSIS

Plaintiff brings her claims of sexual harassment and retaliation under a variety of federal and local statutes.  The Commonwealth, the PRFD, and Rodríguez move to dismiss all of plaintiff's claims against them, arguing that some are barred by Eleventh Amendment sovereign immunity and that others should be dismissed for failure to state a claim.  (Docket No. 23). Hernández moves separately to dismiss plaintiff's constitutional claims, as well as all damages claims against him in his official capacity, based on the same arguments that his co-defendants assert.[10]  (Docket No. 24).  Each of these arguments will be addressed in turn.

### A.   Unnamed Defendants

As a preliminary matter, plaintiff's complaint includes five generally named defendants who allegedly aided and abetted in committing the civil rights violations for which she sues. Said defendants have not been addressed in either a motion to amend the complaint or a request for additional time to serve those defendants.  Further, plaintiff has failed to demonstrate good cause for her failure to name and serve the unnamed defendants within the 120-day time period specified by Federal Rule of Civil Procedure 4(m).[11]  Therefore, it is hereby recommended that the court dismiss all five unnamed defendants in the amended complaint.  See Mulero Abreu v. Oquendo Rivera, 729 F. Supp. 2d 498, 511 (D.P.R. 2010).

### B.   Eleventh Amendment Immunity & Individual Liability

Plaintiff's complaint does not specify which of her many claims are asserted against which of the four named defendants; thus, it will be read to assert all claims against all

---

[10] Hernández's motion to dismiss does not mention or address plaintiff's claims under Puerto Rico law.
[11] Furthermore, the deadline to add parties was June 1, 2011.  (Docket No. 32, p. 2).

defendants.[12]   However, several of plaintiff's claims against the Commonwealth, the PRFD and the individual defendants are barred by the doctrine of Eleventh Amendment sovereign immunity, while other claims are brought under laws that do not allow individuals to be sued. Therefore, before proceeding to the merits of plaintiff's claims, it must be clarified which of those claims may be maintained against which of the defendants.

### 1. Eleventh Amendment Sovereign Immunity

Co-defendant Hernández moves to dismiss all of plaintiff's claims for money damages against him in his official capacity as barred by the Eleventh Amendment to the United States Constitution.   (Docket No. 24, p. 12).   The Commonwealth, the PRFD, and Rodríguez in her official capacity move to dismiss plaintiff's First and Fourteenth Amendment claims on the same grounds.   (Docket No. 23 at 7).   The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."   U.S. Const. Amend. XI.   Accordingly, it is well-settled that the Eleventh Amendment bars suits against a state by individuals.   See e.g., Edelman v. Jordan, 415 U.S. 651 (1974).[13]   Additionally, "a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment."   Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984).   For a state agency or department to invoke Eleventh Amendment immunity, it must be an arm, or alter ego, of the state.   Wojcik v. Mass. State Lottery Comm'n, 300 F.3d 92, 99 (1st Cir. 2002).   The PRFD is an arm of the state and is

---

[12] The court notes with disapproval the all too common practice of filing such "shotgun pleadings," which "list[ ] a host of statutes and claim[ ] that each has been violated by multiple defendants collectively without specifying the liability or actions of each defendant."   See Rodríguez Santiago, et. al. v. Commonwealth of Puerto Rico, et. al., Civil No. 09-1645 (CCC), 2011 WL 6046606 (D.P.R. Nov. 11, 2011) (slip copy).

[13] It is well-settled that "Puerto Rico, despite the lack of formal statehood, enjoys the shelter of the Eleventh Amendment in all respects."   Ramírez v. P.R. Fire Serv., 715 F.2d 694, 697 (1st Cir. 1983).

thus cloaked with such immunity.  Ramírez v. Puerto Rico Fire Svc., 715 F.2d 694, 697 n.4 (1st Cir. 1983).  Additionally, claims against state employees in their official capacities are deemed to lie against the state itself, and are thus also protected from suit by the Eleventh Amendment. See, e.g., Kentucky v. Graham, 473 U.S. 159, 165-66 (1985).  Therefore, all of plaintiff's claims against the Commonwealth, the PRFD, and Hernández and Rodríguez in their official capacities will be barred by the Eleventh Amendment unless an exception applies.

Certain sovereign immunity exceptions exist when that protection is waived by the state or "stripped away" by Congress.  Metcalf & Eddie, Inc. v. P.R. Aqueduct & Sewer Auth., 991 F.2d 935, 938 (1st Cir. 1993).  There are four circumstances in which this occurs: (1) when a state consents to be sued in a federal forum; (2) when a state waives "its own immunity by statute or the like"; (3) when Congress abrogates state immunity; and (4) when "other constitutional imperatives...take precedence over the Eleventh Amendment federal-court bar." Id. at 938 (citations omitted); see also Toledo v. Sánchez, 454 F.3d 24, 31 (1st Cir. 2006).  Title VII is an example of the third listed exception, whereby Congress has abrogated states' sovereign immunity to authorize awards of monetary damages against states.  See Fitzpatrick v. Bitzer, 427 U.S. 445, 447 (1976) (upholding 1972 amendments to Title VII, which extended damages provisions to individuals suing state governments).  Therefore, plaintiff's Title VII claims against the Commonwealth and PRFD present no Eleventh Amendment issues.  On the other hand, there is no such exception with respect to plaintiff's constitutional claims.  It is well-settled that Congress did not intent to waive states' sovereign immunity by enacting 42 U.S.C. § 1983.  See Will v. Michigan Dep't of State Police, 491 U.S. 58, 66, 67 n.6 (1989) (citing Quern v. Jordan, 440 U.S. 332 (1979)).

Similarly, the court can find no such exception with respect to plaintiff's Puerto Rico law claims.  Courts will only find that a state has waived its own Eleventh Amendment immunity by legislative fiat where the same is "stated 'by the most express language or by such overwhelming implications from the text as will leave no room for any other reasonable construction.'" Edelman v. Jordan, 415 U.S. 651, 673 (1974) (quoting Murray v. Wilson Distilling Co., 213 U.S. 151, 171 (1909)); see also Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 241 (1985) (holding that the statute must "specify the State's intention to subject itself to suit in *federal court*" in order to constitute a waiver).  Laws 17 and 69 do include the Commonwealth government and its agencies within the definition of "employers" who may be held liable under those laws, see 29 L.P.R.A. §§ 155a(2) and 1322, but they contain no express or implied authorization of suits in federal court.  Accordingly, this court has held that the Commonwealth has not waived its sovereign immunity under Laws 17 and 69.  See Nieves Garay v. Puerto Rico Police Dep't, Civil No. 09-1959, 2011 WL 2518801, at *5 (D.P.R. June 23, 2011); Huertas González v. Univ. of Puerto Rico, 520 F. Supp. 2d 304, 315-16 (D.P.R. 2007); Padilla Cintrón v. Rosselló González, 247 F. Supp. 2d 48, 58-59 (D.P.R. 2003).  Additionally, the Commonwealth has not waived its sovereign immunity with respect to Law 115, which does not even include the Commonwealth and its agencies in its definition of employer.  See Díaz v. Dep't of Educ., Civil No. 09-1564, 2011 WL 4625983 at *5 (D.P.R. Sept. 30, 2011); 29 L.P.R.A. § 194.  While this court has yet to address the same question as to Law 426, there is nothing in the text of that law indicating the Commonwealth's consent to be sued under it in federal court.  Law 426's civil liability provision states that an aggrieved plaintiff "may file a civil suit against the public official or employee who acts in contravention of [Law 426's] provisions."  1 L.P.R.A. § 606(b).  However, it does not authorize suit against the Commonwealth government or the agency itself, either in state or

federal court.  Therefore, Law 426 should not be read to waive the Commonwealth's sovereign immunity.[14]

There is one remaining exception to the sovereign immunity doctrine, which exists with respect to claims for prospective injunctive relief against state officers in their official capacity. Ex Parte Young, 209 U.S. 123, 160 (1908); Pennhurst, 465 U.S. at 102-03.  This allows a state official to be sued only to enjoin a continuing violation of federal law.  Papasan v. Allain, 478 U.S. 265, 277-78 (1986); Whalen v. Mass. Trial Court, 397 F.3d 19, 29-30 (1st Cir. 2005).[15] Plaintiff, after conceding that the Eleventh Amendment bars her § 1983 claims for money damages against the Commonwealth and the PRFD, maintains that she can still bring her claim for "prospective injunctive relief against the state under the case[ ] of Ex Parte Young."  (Docket No. 31, p. 6, ¶ 9).  Plaintiff's slightly misapprehends that doctrine.  Young and its progeny allow suits against state officials in their official capacity, but do not allow the state itself to be sued. See Pennhurst, 465 U.S. at 117-18.  Therefore, any claim for injunctive relief under Section 1983 could proceed only against Rodríguez and Hernández in their official capacities.   However, because plaintiff's complaint fails to allege any specific, ongoing violation of her constitutional rights, she cannot make out a claim for injunctive relief.  To obtain injunctive relief, a plaintiff must show the existence of a real and immediate injury, not an abstract injury or one that is conjectural or hypothetical.  See City of Los Angeles v. Lyons, 461 U.S. 95, 101-02 (1983). Under this standard, a showing of past injury is insufficient if it is "unaccompanied by any continuing, present adverse effects."  O'Shea v. Littleton, 414 U.S. 488, 496 (1974).  Rather,

---

[14] Additionally, plaintiff concedes that she may not assert her Law 100 claim against the Commonwealth or the PRFD, as this law does not apply to a government agency or instrumentality, unless it is operating as a private business or enterprise.  (Docket No. 31, p. 26, ¶ 58); see 29 L.P.R.A. § 151(2); Montalvo Padilla v. Univ. of Puerto Rico, 492 F. Supp. 2d 36 (D.P.R. 2007).

[15] This exception, however does not apply to claims brought pursuant to state laws and thus does not in any way revive plaintiff's Law 115 claim against the individual defendants in their official capacity.  Pennhurst, 465 U.S. at 117-18; Díaz Fonseca v. Puerto Rico, 451 F.3d 13, 43 (1st Cir. 2006); Cuesnongle v. Ramos, 835 F.2d 1486, 1496-97 (1st Cir. 1987).

there must be a "real and immediate threat of repeated injury."  Id.  Plaintiff fails to specify that defendants' alleged violations of her First and Fourteenth Amendment rights have caused continuing adverse effects or will cause repeated injury.  Moreover, the paragraphs in plaintiff's complaint referring to injunctive relief merely ask the court to order defendants to stop violating plaintiff's civil rights and to provide her with a "workplace free from hostile environment and free from sex discrimination."  (Docket No. 67, ¶¶ 5-8, 1-3).  She does not indicate the specific behavior that she wishes the court to enjoin.  Therefore, it is recommended that plaintiff's request for injunctive relief be dismissed, and thus her constitutional claims remain outstanding only as to Rodríguez and Hernández in their individual capacities.

### 2.      Title VII Individual Liability

It is well-settled that individual employees are not liable for acts that violate Title VII. Fantini v. Salem State Coll., 557 F.3d 22, 29-31 (1st Cir. 2009) ("Consequently, we find that there is no individual employee liability under Title VII.") (citing multiple cases from other circuits); see also; Cardona Román v. Univ. of P.R., 799 F. Supp. 2d 120, 129 (D.P.R. 2011); Rivera Tirado v. Autoridad de Energía Eléctrica, 663 F. Supp. 2d 36, 38 (D.P.R. 2009).  In her opposition, plaintiff appears to clarify that her Title VII claims are directed only against her employer, the Commonwealth and the PRFD.  (Docket No. 31 at 22, ¶ 47).  Therefore, it is recommended that plaintiff's Title VII claims against Hernández and Rodríguez, to the extent that the complaint asserts them, if at all, be dismissed.

### 3.      Individual Liability Under Puerto Rico Laws

By contrast, individual employees can be held liable under Puerto Rico Law 100.  See Otero Merced v. Preferred Health Inc., 680 F. Supp. 2d 388, 392 (D.P.R. 2010) (citing Rosario Toledo v. Distribuidora Kikuet, Inc., 151 D.P.R. 634 (2000) (considering allegations of sexual

harassment)); Pacheco Bonilla v. Tooling & Stamping, Inc., 281 F. Supp. 336 (D.P.R. 2003) (noting that Law 100 liability extends not only to the actual employer or the owner and president of a corporation, but also to any other person responsible for the illegal conduct).   Individual employees can also be held liable for sexual harassment under Laws 17 and 69.   See Miró Martínez v. Blanco Vélez Store, Inc., 393 F. Supp. 2d 108, 114-15 (D.P.R. 2005).

Additionally, claims for violations of Laws 115 and 426 may be brought against individual employees.  This court has held that Law 115 allows for individual liability against a supervisor who retaliates against an employee.  Reyes Guadalupe v. Casas Criollas, 597 F. Supp. 2d 255, 260 (D.P.R. 2008) (citing Hernández v. Raytheon Serv. Co. P.R., Civ. No. 05-1937 (CCC), 2006 WL 1737167 (D.P.R. Apr. 26, 2006) (unpublished).  Law 426 provides that any public employee who alleges a violation of said law "may file a civil suit against the public official or employee who acts in contravention of [Law 426's] provisions."  1 L.P.R.A. § 606(b). Therefore, the plain language of Law 426 permits individual liability.  In sum, plaintiff can maintain all of her Puerto Rico claims against Hernández and Rodríguez in their personal capacities.

### 4. Plaintiff's Outstanding Claims

Accordingly at this juncture, plaintiff's First and Fourteenth Amendment constitutional claims remain outstanding only as to Rodríguez and Hernández in their personal capacities. Plaintiff's Title VII claim remains only as against the Commonwealth and the PRFD.  Plaintiff's Puerto Rico law claims, under Laws 17, 69, 100, 115, and 426, may proceed only against the individual defendants in their personal capacities.

### C.       Sexual Harassment Under Title VII & the 14th Amendment

####       1.       Sexual Harassment as an Equal Protection Violation

A plaintiff asserting a violation of the Equal Protection Clause of the Fourteenth Amendment must allege that she has experienced intentional discrimination based on her membership in a protected class, see Washington v. Davis, 426 U.S. 229 (1976), or that she as an individual has been intentionally treated differently from others similarly situated and that there is no rational basis for the treatment.   Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000).   Of course, she must also allege that the discriminatory or differential treatment was perpetrated by a state actor.   Id.

Defendants move to dismiss plaintiff's equal protection claim, arguing that she has not alleged that she was the subject of an impermissible classification nor that she was treated differently from any other similarly situated employee.   Plaintiff's response in opposition is that she was treated unequally based on her sex.   (Docket No. 31 at 14-15, ¶ 29).   Although plaintiff did not manage to clearly delineate this in her opposition or in her complaint, her claim that Hernández sexually harassed her constitutes a sex discrimination claim under the Equal Protection clause, just as it does under Title VII.   Sexual harassment is a form of discrimination based on sex.   See Meritor Savings Bank v. Vinson, 477 U.S. 57 (1986); Lipsett v. Univ. of P.R., 864 F.2d 881, 888 (1st Cir. 1988).   Moreover, sex-based discrimination is a violation of equal protection if it "does not 'serve important governmental objectives' and is not 'substantially related to achievement of those objectives.'"   Lipsett, 864 F.2d at 896 (quoting Davis v. Passman, 442 U.S. 228, 234-35 (1979)).   Therefore, if plaintiff's complaint sufficiently alleges the elements of a sexual harassment claim, she will succeed in establishing a Fourteenth Amendment equal protection claim as well as a Title VII claim.   See Siaca v. Autoridad de Acueductos y

Alcantarillados de Puerto Rico, 160 F. Supp. 2d 188, 195 (D.P.R. 2001) ("[A] plaintiff may assert a claim for employment discrimination under both Title VII and 42 U.S.C. § 1983); Ribot Espada v. Woodroffe, et. al., 896 F. Supp. 69 (D.P.R. 1995) (holding that Title VII did not provide exclusive remedy for sex discrimination in public employment; claim could also be brought under Equal Protection clause).

### 2.      Sexual Harassment Claim Against Hernández Individually – Under the Equal Protection Clause and Puerto Rico Law 17

The First Circuit has held that the same legal standards for sexual harassment claims under Title VII apply to sexual harassment claims by public employees brought under the Equal Protection clause.  Lipsett, 864 F.2d at 896-97.  Additionally, Title VII precedents are followed in construing Puerto Rico law.  Hernández Loring v. Univ. Metropolitana, 233 F.3d 49, 56 (1st Cir. 2000); see also Aponte–Rivera v. DHL Solutions (USA), Inc., No. 07-1950, 2010 WL 376330, *2, (D.P.R. Jan. 25, 2010) (slip copy) ("Courts have recognized that hostile work environment claims brought under Law 17, Law 69, and Law 100 are essentially the same as a Title VII hostile work environment claim.") (collecting cases); Figueroa García v. Lilly del Caribe, Inc., 490 F. Supp. 2d 193, 212 (D.P.R. 2007) ("Law 17 . . . largely tracks the language of the EEOC guidelines regarding hostile work environment claims."). [16]  Therefore, the same Title VII legal standards apply to plaintiff's sexual harassment claims against Hernández under the Equal Protection Clause and Puerto Rico law, even though she cannot maintain a Title VII claim against him individually.[17]

---

[16]  The relevant section of Law 17 provides that: "Sexual harassment in employment consists of any type of undesired sexual approach, demand for sexual favors or any other verbal or physical behavior of a sexual nature . . . when one or more of the following circumstances occur . . . .  When the conduct has the effect or purpose of interfering unreasonably with the performance of a person's work or when it creates an intimidating, hostile or offensive work environment."  P.R. Stat. Ann. Tit. 29, § 155b(c).

[17]  Although Hernández has not moved to dismiss plaintiff's Law 17 claim, see supra, note 10, the court must address the same legal questions in deciding whether to dismiss her equal protection claim.  Accordingly, in the interest of judicial economy, the court also addresses plaintiff's Law 17 claim.

Courts have recognized two forms of sexual harassment under Title VII: quid pro quo and hostile work environment. Although plaintiff mentions both forms in her complaint, her allegations can only be construed as a potential hostile work environment claim. Quid pro quo sexual harassment occurs when "a supervisor conditions the granting of an economic or other job benefit upon the receipt of sexual favors from a subordinate, or punishes that subordinate for refusing to comply." Lipsett, 864 F.2d at 897 (citations omitted); see also García v. Suárez & Co., 288 F. Supp. 2d 148, 158 (D.P.R. 2003) ("The gravamen of a quid pro quo claim is that a tangible job benefit or privilege is conditioned on an employee's submission to sexual black-mail and that adverse consequences follow from the employee's refusal.") (quoting Acevedo-Vargas v. Colón, 68 F. Supp. 2d 80, 89 (D.P.R. 1999)). Because Hernández was not plaintiff's supervisor, she cannot maintain a quid pro quo claim against him. At the time the alleged events took place, plaintiff was the PRFD Head of Administration, while Hernández was the Director of the PRFD Transport Office. While the complaint does not explain the relationship between these two positions within the PRFD, it does not allege that Hernández supervised plaintiff and it cannot be reasonably inferred that the Director of the PRFD Transport Office supervises the PRFD Head of Administration. Nor is it evident from the complaint that Hernández had any control over the terms and conditions of plaintiff's employment. Therefore, the only type of sexual harassment claim that plaintiff may maintain is a hostile work environment claim.

A plaintiff may bring a hostile work environment claim where "sexual harassment [is] so 'severe or pervasive' as to 'alter the condition [of the victim's] employment and create an abusive working environment.'" Faragher v. City of Boca Raton, 524 U.S. 775, 786 (1998) (quoting Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986)). However, such conduct is actionable only when it "go[es] beyond the 'merely offensive' and approach[es] tangible injury

(including psychological injury)[.  F]actors to be considered include frequency, severity, whether the conduct is 'physically threatening or humiliating," and whether it 'unreasonably interferes with an employee's work performance.'"  Hernández Loring, 233 F.3d at 56 (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21-23 (1993)).  Additionally, the sexually objectionable conduct must be "both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and that [plaintiff] in fact did perceive it to be so."  Pérez Cordero v. Wal-Mart Puerto Rico, Inc., 656 F.3d 19, 27 (1st Cir. 2011) (citations omitted).

Plaintiff's complaint consists essentially of one severe incident—the telephone call to her hotel room during which Hernández said that he had something "big and fat" for her and that he wanted to steal a kiss from her—and an unspecified number of non-severe incidents, such as invitations to go out for lunch, phone calls to her office, winks, and questions about her marital status.  The complaint fails to detail the frequency of these incidents or even the content of the office phone calls.  Her remaining allegation is that Hernández made what she characterizes as "flirtatious remarks," again, with an unspecified frequency.  Because plaintiff fails to detail the content of any of these remarks, it is impossible to know whether they were objectively flirtatious and whether they were severe.  There is no "mathematically precise test" for determining when a work environment becomes hostile or abusive; rather, the situation "should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances."  Billings v. Town of Grafton, 515 F.3d 39, 48 (1st Cir. 2008).  Viewing the entirety of the allegations in plaintiff's complaint, it is not reasonable to infer that Hernández's behavior created a hostile work environment for plaintiff.  While the question of whether conduct rises to the level of creating a hostile or abusive environment is generally better left to the jury, it is still subject to "policing at the baseline."  Billings, 515 F.3d at 48 (citing Pomales v.

Celulares Telefónica, Inc., 447 F.3d 79, 83 (1st Cir. 2006).  In light of the Supreme Court's repeated emphasis that harassing conduct must be serious enough to alter the conditions of employment and create an abusive environment, plaintiff's claim falls below that baseline.  See Clark County School Dist. v. Breeden, 532 U.S. 268, 278 (2001) (noting that the Court had previously "reiterated what was plain from our previous decisions, that sexual harassment is actionable under Title VII only if is so severe and pervasive as to alter the conditions of the victim's employment and create an abusive working environment.") (citations omitted).

One consideration permeating this analysis is that Hernández was not plaintiff's supervisor or a co-worker with whom she worked closely on a day to day basis.  Because he was not plaintiff's supervisor, the power differential that could make flirtations and expressions of interest turn into something more intimidating is not present.  Neither is the proximity between close co-workers that could intensify this type of conduct so that it saturated plaintiff's working environment.  By contrast, in Pérez Cordero, plaintiff and defendant worked together on the same shift in the same department and defendant was the "team leader," meaning that she had some supervisory authority over plaintiff.  656 F.3d at 21.  The early harassment consisted of mere flirtation and expressions of romantic interest, but later involved embarrassing sexual remarks in front of colleagues and one incident of nonconsensual physical contact.  Additionally, once Pérez Cordero rejected the defendant's romantic overtures, defendant threatened him with a negative evaluation, assigned him more onerous tasks, and berated him in front of other employees.  Id. at 29.  In finding that the harassment severe and pervasive, the court found relevant the threats, the scolding, and the increased job duties that "undermine[d] plaintiff's ability to succeed at his job."  Id. (citing O'Rourke v. City of Providence, 235 F.3d 713, 729 (1st Cir. 2001).  The court focused on the "non-consensual physical contact, embarrassing sexual

18

remarks, public scolding, exclusion from meetings and training opportunities, threats of discipline, and an assignment to him of those tasks generally regarded as least desirable." Id. at 30. There is no indication that the early flirtation alone would be considered severe and pervasive.

While "[s]evere or pervasive sexual remarks [and] innuendos" may constitute sexual harassment, Figueroa García, 490 F. Supp. 2d at 193, the complaint does not show that Hernández's "flirtatious remarks" or calls and visits to plaintiff's office were sexual in nature, nor that they were offensive or intimidating. Additionally, there is no information in the complaint as to the frequency of this behavior. Plaintiff merely states that Hernández's remarks, invitations to lunch, calls to her office, winks and requests for help with matters that he could resolve himself were a "constant" pattern, which is too vague to give any concrete sense of frequency. Her allegation that he asked her "more than once" whether she was married is similarly vague as to its frequency. Moreover, this conduct lasted no more than two months in total, see supra, note 3, a relatively brief time period. See Figueroa García, 490 F. Supp. 2d at 205 (declining to grant summary judgment on sexual harassment claim where record showed numerous sexually charged incidents over a three-year period, one involving unwanted and explicitly sexual physical contact with an intimate body part, but characterizing evidence as "thin"). Therefore, Hernández's flirtatious efforts, while possibly boorish and bothersome, are not sufficient to create a hostile or abusive working environment, even when considered in conjunction with the more serious telephone call incident.

Courts have routinely held that a single episode of offensive sexual conduct is not sufficient to create a hostile work environment unless it is exceptionally severe. See Breeden, 532 U.S. at 270-71 ("A recurring point in our opinions is that . . . isolated incidents (unless

extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'"); see also O'Rourke v. City of Providence, 235 F.3d 713, 729 (1st Cir. 2001) ("[O]ffhand comments and isolated incidents' are not sufficient to create actionable harassment; the hostile work environment standard must be kept sufficiently demanding to ensure that Title VII does not become a 'general civility code.'") (citing Faragher, 524 U.S. at 788; Oncale v. Sundowner Offshore Servs., 523 U.S. 75, 81 (1998)).  Hernández's phone call to plaintiff's hotel room, while offensive and exceedingly inappropriate, does not reach the level of severity that courts have required.  In Pomales v. Celulares Telefónica, Inc., for example, the First Circuit held that a single incident where the plaintiff's supervisor grabbed his crotch and said "it would be great to come with you" was insufficient to constitute a hostile work environment.  447 F.3d 79, 83 (1st Cir. 2006).  In so holding, the court noted that the conduct alleged was similar to other conduct that had been deemed insufficient to establish a hostile work environment claim. Id. at 84 (citing Chamberlin, 915 F.2d at 783 (concluding that it was "highly doubtful" that five sexual advances by a supervisor "could be considered sufficiently severe or pervasive to support a sexual discrimination claim of the hostile environment variety"); Morgan v. Mass. Gen. Hosp., 901 F.2d 186, 192-93 (1st Cir.1990) (holding that conduct was not sufficiently severe or pervasive where, over two-week period, a coworker stood behind the plaintiff to create physical contact, surreptitiously looked at the plaintiff's genitals in the restroom, and engaged in unwanted touching); Burnett v. Tyco Corp., 203 F.3d 980, 984-85 (6th Cir.2000) (holding that evidence of a single battery and two offensive remarks over six months did not establish a hostile environment)).  The behavior here is similar to that in Pomales.  It is "certainly crude," but it could not, standing alone, create a working an environment that a reasonable person would find abusive.  Id. at 83.  Moreover, there are no facts alleged in the complaint showing that the

incident, or any of Hernández's behavior for that matter, unreasonably interfered with plaintiff's work performance or that it affected her day to day ability to do her job.  See Harris, 510 U.S. at 21.  Therefore, the facts that plaintiff alleges do not establish that she was subjected to a hostile work environment due to sexual harassment.  As such, it is recommended that plaintiff's equal protection, Law 17, Law 69, and Law 100 claims against Hernández be dismissed.

### 3.       Employer Liability Under Title VII and Puerto Rico Law

Even if plaintiff had alleged sufficient facts to show that Hernández's behavior created a hostile work environment, the Commonwealth and PRFD would not be liable for his behavior under Title VII.[18]  The standard under which an employer can be held liable for an employee's sexual harassment under Title VII depends on whether the harassment was perpetrated by the victim's supervisor or co-worker.  See Figueroa García, 490 F. Supp. 2d at 206.  When the alleged harasser is a co-worker, the employer is liable if it knew or should have known about the misconduct and failed to take appropriate corrective action.  Crowley v. L.L. Bean, Inc., 303 F.3d 387, 401 (1st Cir. 2002).  Puerto Rico law contains the same employer liability standard for co-worker sexual harassment.  See 29 L.P.R.A. § 155e ("An employer shall be held responsible . . . if the employer or his agents or his supervisors knew or should have been aware of such conduct . . . .").  Here, this traditional negligence standard applies because the complaint does not allege that Hernández was plaintiff's supervisor.

The allegations in the complaint do not give rise to a reasonable inference that Rodríguez or any other supervisory personnel knew or should have known about Hernández's behavior prior to September 14, 2010, the date that plaintiff filed her administrative complaint.  Prior to this date, plaintiff does not allege that she ever told anyone what was happening, nor that any of the

---

[18] In fact, defendants do not argue that Hernández's actions were not sufficiently severe or pervasive constitute sexual harassment; rather, they only assert that the Commonwealth and the PRFD, as his employers, cannot be held liable for his conduct.  (D.E. 23, pp. 12-13; 35, 4-6).

alleged incidents happened in the presence of a supervisor or other management-level employee.[19]  Further, Hernández's behavior was not frequent, obvious, and pervasive enough to give rise to a presumption that everyone working in the PRFD must have, or should have, known about it.  Therefore, the earliest date that plaintiff's supervisors were on notice about Hernández's behavior was September 14, 2010.  The complaint, however, does not describe any further advances by Hernández after that date.  The last allegedly flirtatious efforts by Hernández described in the complaint are the comments about being plaintiff's bodyguard and asking her if she was married, which occurred at the LULAC convention in July of 2010.  Therefore, plaintiff cannot show that her employer knew or should have known about Hernández's conduct and failed to take corrective action because, according to her complaint, the alleged harassment had ceased by September of 2010, and there was thus nothing left to correct.

### 4.      Supervisory Liability under Section 1983

Because plaintiff cannot establish that the PRFD and the Commonwealth are liable for Hernández's actions under Title VII's negligence standard, she cannot establish that Rodríguez is liable for the alleged equal protection violation under the higher standard for supervisory liability required by Section 1983.  Under Section 1983, liability can only be imposed on officials who were personally involved in the deprivation of a constitutional right.  Pinto v. Nettleship, 737 F.2d 130, 132 (1st Cir. 1984).  Therefore, when the violation alleged is purposeful discrimination, a plaintiff must plead that each defendant, through his or her *own actions*, has

---

[19] Plaintiff does state, in a boilerplate section of the complaint labeled "Introductory General Facts," that the "[d]espite plaintiff Nélida Ramos Santos's repeated complaints to the 'PRFD' about these co-defendants' continuous pervasive sexual misconduct and/or deliberate indifference and/or retaliations resulting in significant damages and their effect on the office, the 'PRFD' failed to correct the situation."  (D.E. 67, ¶ 20).  However, there are absolutely no specific factual allegations regarding these alleged complaints, indicating, e.g., when she complained, and to whom, and what she said.  Accordingly, this sentence is nothing more than a "threadbare recital" of the elements of a cause of action that cannot survive when faced with a 12(b)(6) motion to dismiss.  See Iqbal, 129 S. Ct. at 1949-50.

violated her constitutional right to equal protection.  See Carrasquillo González v. Sagardía de Jesús, 723 F. Supp. 2d 428, 438 (D.P.R. 2010) (citing Iqbal, 129 S. Ct. at 1949).  There is no vicarious liability under Section 1983, and thus officials cannot be held liable for the conduct of their subordinates on a *respondeat superior* theory.  Iqbal, 129 S. Ct. at 1948.  Additionally, plaintiff must "show that the official had actual or constructive notice of the constitutional violation."  Feliciano Hernández v. Pereira Castillo, 663 F.3d 527 (1st Cir. 2011) (quoting Rodríguez García v. Municipality of Caguas, 495 F.3d 1, 10 (1st Cir. 2007)).  Plaintiff has failed to show that the Rodríguez had notice of Hernández's behavior until after it had already stopped.  Moreover, plaintiff does not allege that Rodríguez was personally involved sexually harassing her, and there is no other type of sex discrimination alleged in the complaint.  Therefore, even if plaintiff had established that Hernández sexually harassed her in violation of her right to equal protection Rodríguez should not be held liable for that violation and, therefore, it is recommended that plaintiff's equal protection claim against her be dismissed.

### 5.    Retaliation Under Title VII & Law 115

Title VII makes it unlawful for an employer to retaliate against an employee who complains about discrimination in the workplace.  See 42 U.S.C. § 2000e-3(a).  To establish a prima facie case of retaliation under Title VII, an employee must show that: (1) she engaged in protected conduct, (2) she suffered an adverse employment action, and (3) a causal connection existed between the protected conduct and the adverse action.  Noviello, 398 F.3d at 88.  Similarly, Puerto Rico Law 115 protects employees from termination, discrimination, or other adverse employment actions affecting the terms and conditions of their employment "should the employee offer or attempt to offer . . . any testimony, expression, or information before a legislative, administrative or judicial forum . . . ."  29 L.P.R.A. § 194a(a).  Because Law 115

requires the same adverse employment action showing as a Title VII retaliation claim, courts have treated the two claims the same.  See Rivera Rodríguez v. Sears Roebuck De Puerto Rico, Inc., 367 F. Supp. 2d 216, 230 (D.P.R. 2005).

Even though plaintiff cannot establish that she was subject to unlawful discrimination under Title VII, she can still maintain a retaliation claim if she can establish the three required elements of the prima face case.  See Wyatt v. City of Boston, 35 F.3d 13 (1st Cir. 1994).  "The success of a retaliation claim does not require that the alleged wrongful conduct itself be illegal." Álvarez v. Plom-Electric Corp./Imaginación, et. al., Cv. No. 04-1334 (SEC), 2006 WL 6561405 at *3 (D.P.R. Jun. 19, 2006)) (citing cases).  Plaintiff has alleged that she filed both an internal administrative complaint and an EEOC complaint; thus, she has established the first prong.

As to the second prong, an adverse employment action is defined as one that would "dissuade a reasonable worker from making or supporting a charge of discrimination."  Godoy v. Maplehurst Bakeries, Inc., 747 F. Supp. 2d 298, 314 (D.P.R. 2010).  This typically involves actions such as "hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."  Morales Vallellanes v. Potter, 605 F.3d 27, 35 (1st Cir. 2010).  Plaintiff's allegations regarding the changes to her workspace (e.g., lack of parking, no internet access, a broken chair) are unlikely to meet this standard, as they are not a "significant change in benefits."  Additionally, plaintiff does not explain what position she was demoted to and how her duties were different.  However, plaintiff does allege that her work functions were withdrawn and that she was demoted to a lower ranked position.  Plaintiff's allegation is vague because she does not even name or describe the position to which she was demoted.  Nonetheless, a demotion to a lower position does constitute an adverse employment action for Title VII retaliation purposes.  See, e.g., Marrero v. Goya of

Puerto Rico, 304 F.3d 7, 23-24 (1st Cir. 2002).  Therefore, though plaintiff's allegations are thin, they are adequate to establish this prong at the motion to dismiss stage.

With respect to causation, plaintiff's complaint contains no facts except for the proximity in time between her complaint and the demotion.  However, such temporal proximity has often been found sufficient to establish causation when that proximity is especially close.  See Calero Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 25 (1st Cir. 2004); Oliver v. Digital Equipment Corp., 846 F.2d 103, 110 (1st Cir. 1988) ("A showing of discharge soon after the employee engages in an activity specifically protected by Section 704(a) of Title is indirect proof of a causal connection between the firing and the activity because it is strongly suggestive of retaliation.") (citations omitted).  Here, the temporal proximity was close.  Plaintiff filed her administrative complaint on September 14, 2010, and on September 29, 2010, Rodríguez informed her that she was being demoted.  On that same day, plaintiff filed her EEOC complaint and only a few days later, on October 1, 2010, she alleges that a gradual process of demotion and withdrawal of her work functions began that lasted through December of 2010.  The two week time period between plaintiff's first complaint and the beginning of the adverse employment action is sufficient to establish causation at the prima facie phase.  See Calero Cerezo, 355 F.3d at 25-26 (holding that one-month temporal proximity was sufficient to establish causation and noting that "the prima facie burden in this context is not an onerous one").  Therefore, it is recommended that defendants' motion to dismiss be denied as to the Title VII retaliation claim against the Commonwealth and the PRFD and the Law 115 claim against Rodríguez.  It is further recommended that said claims be dismissed against Hernández because, as he had no decision-making authority over plaintiff's employment, he cannot be responsible for her demotion and change in work duties.

D.      **First Amendment & Whistleblower Claims**

1.      **First Amendment**

Plaintiff appears to claim that the alleged retaliation was also a reprisal for her disclosure to Rodríguez of Hernández's improper use of funds from a supplier (Fontán) to buy plane tickets for the LULAC conference in New Mexico.  Accordingly, she alleges that these actions constitute violations of her First Amendment rights and of "federal and local whistleblower statutes."  (Docket No. 67, ¶ 63).

The Supreme Court has held that the First Amendment protects public employees who experience retaliation as a result of having spoken out on matters of public concern.  See Rankin v. McPherson, 483 U.S. 378, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987); Connick v. Myers, 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983); Pickering v. Board of Education, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968).  In order to make out such a claim, a plaintiff must establish three elements: (1) that she was speaking as a public citizen on a matter of public concern, (2), that the plaintiff's and the public's First Amendment interests outweigh the government's interest in promoting efficiency in the services that it provides, and (3) that the protected speech was a "substantial or motivating factor" in the adverse employment decision. Ramos Rivera v. Dep't de la Familia de Puerto Rico, 536 F. Supp. 2d 115 (D.P.R. 2008) (citations omitted).

Plaintiff has established the second part of the first prong because the subject-matter of her speech was Hernández's alleged misuse of funds from a public supplier, essentially a form of corruption.  It is well-established that governmental corruption is a matter of public concern. See, e.g., Torres Rosado v. Rotger Sabat, 204 F. Supp. 2d 252, 260 (D.P.R. 2002).  However, she has failed to allege sufficient facts to show that she uttered this speech as a public citizen.  The

Supreme Court has held that an employee who makes a statement pursuant to her official duties is acting as an employee, and her speech is thus not constitutionally protected.  Garcetti v. Ceballos, 547 U.S. 410 (2006).  The First Circuit has set forth a two-step test to answer the threshold question of whether an employer was speaking as a citizen or as an employee. Decotiis v. Wittemore, 635 F.3d 22, 31 (1st Cir. 2011).  First, the court must determine what the employee's official responsibilities are.  Id.  Then, it must determine whether the speech at issue was made pursuant to those responsibilities.  Id.  While plaintiff's complaint lists the job duties for all of her prior positions at the PRFD, she does not list any for her position as Head of Administration.  (See Docket No. 67, ¶¶ 22-29).  Plaintiff's failure to include these details makes it impossible for the court to conclude that her speech was not part of her official duties. Specifically, the speech at issue is plaintiff's reporting to Rodríguez that she had received a check that she believed to be illegal because of Hernández's actions.  Without knowing exactly what plaintiff's duties were, the most reasonable inference is that the responsibilities of the Head of Administration included keeping PRFD operations running efficiently and reporting any irregularities to PRFD Chief Rodríguez.  Therefore, the most reasonable inference is that plaintiff's speech was uttered in the course of her official job duties.  Because plaintiff's exact job responsibilities are unknown, it is possible that her speech was made outside the course of her job duties.  However, allegations showing a mere possibility of a viable cause of action will not survive a motion to dismiss.  See Iqbal, 129 S. Ct. at 1940 ("[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has . . . not 'show[n] that the pleader is entitled to relief.'").  Iqbal, 129 S. Ct. at 1940 (citing Fed. R. Civ. P. 8(a)(2)).

The First Circuit has emphasized the question of whether an employee was acting as a citizen or an employee is a context-specific inquiry that can be difficult to perform at the motion to dismiss stage. Decotiis, 635 F.3d at 26. However, any difficulty here is merely a result of the gaps in the drafting of plaintiff's complaint. Allowing her to proceed with this claim on these grounds would only reward this omission. Accordingly, it is recommended that plaintiff's First Amendment claim be dismissed as to Rodríguez in her personal capacity.[20]

### 2.     Whistleblower Claims

Plaintiff claims that defendants' conduct violates federal whistleblower laws, but does not cite any specific provision of federal law. If plaintiff refers to the Whistleblower Protection Act of 1989, Pub. L. 101-12, codified at 5 U.S.C. § 1213 *et seq*., such reference is inapposite because that law only applies to federal employees. See Pub. L. 101-12 (entitled "An Act to amend title 5, United States Code, to strengthen the protections available to *Federal employees* against prohibited personnel practices, and for other purposes") (emphasis added). Plaintiff's claim under this Act should therefore be dismissed.

Puerto Rico's Whistleblower Protection Act, Law 426, was enacted to "protect whistleblowers who report acts of public corruption." Frederique-Alexandre v. Dep't of Natural and Envtl. Res., 478 F.3d 433, 440 (1st Cir. 2007). Its purpose is to "protect[ ] the rights of public employees and officials who disclose information or testify on alleged improper or illegal acts regarding the use of public property or funds that due to their nature constitute acts of government corruption, or that fall within the ethical conduct regulated by our legal system." Id. (quoting 1 L.P.R.A. § 601). The law provides, *inter alia*, that:

---

[20] As with plaintiff's Title VII and Law 115 retaliation claims, she cannot maintain her First Amendment claim against Hernández because he had no supervisory authority to change her position or working conditions. See supra, § III.C.5.

No public official or employee may dismiss, threaten, discriminate against or otherwise retaliate against another public official or employee, with regard to the terms, conditions, compensation, location, or employment benefits or privileges, because the latter has disclosed or has attempted, orally or in writing to disclose any testimony, statement, or information on alleged improper or illegal acts in the use of public property or funds or acts that constitute corruption, before any official or employee with investigative functions.

1 L.P.R.A. § 603(a).  Plaintiff has alleged that she orally disclosed to Rodríguez that Hernández had allegedly obtained a check by improper means, which would fall under the definition of the conduct protected by Law 426.  Therefore, plaintiff has shown that she engaged in the type of conduct protected by Law 426.  She has also alleged that Rodríguez told her that she was being demoted to a lower ranked position and that, subsequently, she was demoted.  Therefore, plaintiff suffered the type of adverse employment action that is described in Law 426.

With respect to causation, Law 426 prohibits retaliation "because of" the protected conduct, but it does not set forth a more specific causation standard.  Additionally, there is relatively little jurisprudence interpreting Law 426, and there are no reported cases setting forth a standard for proving causation under that law.  In the absence of any precedent from the Puerto Rico courts, the court declines to impose a higher burden than that required to show causation in Title VII and Law 115 cases at the motion to dismiss stage.  As discussed previously, temporal proximity can be sufficient to establish causation in such cases.  With respect to her alleged whistleblowing action, approximately two and a half months passed between the time plaintiff told Rodríguez about the check in mid-July of 2010 and the time Rodríguez told plaintiff that she was being demoted, on September 29, 2010.  In the Title VII context, "three and four month periods have been held insufficient to establish a causal connection based on temporal proximity," Calero Cerezo, 355 F.3d at 25, yet two month intervals have been found sufficient. See Mariani Colón v. U.S. Dep't of Homeland Sec. ex rel. Chertoff, 511 F.3d 216, 224 (1st Cir.

2007).  Plaintiff's allegation hovers on the borderline here, but the court finds it satisfactory to proceed at this preliminary stage.[21]  Accordingly, it is recommended that defendants' motion as to plaintiff's Law 426 claim against Rodríguez in her official capacity be denied.  However, like plaintiff's Title VII, Law 115, and First Amendment claims, her Law 426 claim cannot be sustained against Hernández, as he had no supervisory authority to take any adverse employment action against her.

### E.    Due Process

The Due Process clause of the Fourteenth Amendment to the United States Constitution prohibit states from "depriv[ing] any person of life, liberty, or property without due process of law."  The due process violation alleged in plaintiff's complaint fails utterly to explain how she was deprived of life, liberty, or property without due process of law.  It merely states that "[d]efendants, through their acts and/or omissions, acting under color of law, deprived plaintiff of her rights to . . . due process of law and to enjoy the opportunity to be promoted as a career PRFD officer to a higher position, all in violation of rights guaranteed by the . . . Fourteenth Amendment[ ] to the Constitution of the United States of America."  Plaintiff does not specify what the deprivation was, and her complaint contains no factual allegations regarding promotions or lack thereof.[22]  In her opposition to defendants' motions to dismiss, plaintiff appears to clarify that she is alleging that she had a property interest in her position at the PRFD and that her demotion occurred without due process of law.

---

[21] This approach is also consistent with the standard set forth in the federal whistleblower statute, which allows an action to proceed if an employee can demonstrate through circumstantial evidence that "the personnel action occurred within a period of time such that a reasonable person could conclude that the disclosure was a contributing factor in the personnel action."  5 U.S.C. § 1221(e)(1)(B).

[22] Even if it had, Puerto Rico law does not create a property right to a promotion for public employees.  See Ramos Rodríguez v. Puerto Rico, 325 F. Supp. 2d 6, 13 (D.P.R. 2004)

A property interest in public employment is created only if "existing rules or understandings" that "stem from an independent source such as state law" create a reasonable expectation that employment will continue.  Dávila Alemán v. Feliciano Melecio, 992 F. Supp. 91, 96 (D.P.R. 1997) (quoting Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538 (1985); citing Bishop v. Wood, 426 U.S. 341 (1976)).  Puerto Rico Law creates a property right in continued employment for career employees.  See 3 L.P.R.A. § 1465 ("Career employees . . . are entitled to remain in the service pursuant to the provisions of § 1462e of this title."); § 1462e(4) ("The appointing authority may only . . . remove any career employee for just cause, after having given written notice of the bringing of charges and . . . his/her right to request a hearing before action is taken.");  Kercado Meléndez v. Aponte Roque, 829 F.2d 255, 262 (1st Cir. 1987) (construing predecessor statute and holding that Puerto Rico law clearly gives career employees a property interest in their employment).  Plaintiff alleges that she was a career employee, and she thus has a property interest in her continued employment with the PRFD.  (Docket No. 67 at ¶ 11).[23]

The deprivation plaintiff alleges is that she was demoted to a lower ranked position.  She also alleges that her work functions were withdrawn.  Generally, a demotion is considered to be a deprivation of a public employee's property interest in continued employment.  See; Natal Rosario v. Puerto Rico Police Dep't, 609 F. Supp. 2d 194, 202 (D.P.R. 2009); Gierbolini v. Aponte Roque, 666 F. Supp. 334 (D.P.R. 1987).  However, mere downgraded job duties or transfers to different positions that do not amount to demotions are not deprivations because

---

[23] Defendants argue that plaintiff's position as the Head of Administration was "possibly" a trust position, meaning that she would not have a property interest in her continued employment.  (Docket No. 23, p. 8).  See Díaz Pedrosa v. Puerto Rico Power Auth., 555 F. Supp. 2d 306, 315 (D.P.R. 2008) ("Unlike career employees . . . the holder of a trust position does not have a constitutionally protected property interest in that position.") (quoting Galloza v. Foy, 389 F.3d 26 (1st Cir. 2004).  While it is certainly possible that the Head of Administration of the PRFD is in fact a trust position, plaintiff has alleged that she is a career employee and, at the motion to dismiss stage the court must accept all of her factual allegations as true.

"under Puerto Rico law, public employees have a property interest in their continued employment, but not in the functions that they perform." Rosado de Vélez v. Zayas, 328 F. Supp. 2d 202, 212 (D.P.R. 2004) (citing Consejo de Educación de la U.P.R., . Roselló, 137 D.P.R. 83, 110 (1994); see Ruiz Casillas v. Camacho Morales, 415 F.3d 127, 134 (1st Cir. 2005); Ayala Sepúlveda v. Municipality of San Germán, 661 F. Supp. 2d 130, 139 (D.P.R. 2009) ("Since the plaintiff's allegations . . . do not involve the termination of his employment, but merely a change in his functions, i.e. a transfer from one division of the municipal government to another, he cannot obtain redress for a due process violation, even if the defendants' alleged actions would constitute adverse employment actions."); see also Soto Padro v. Public Bldg. Auth., 747 F. Supp. 2d 319, 332 (D.P.R. 2010) (holding that there was no due process violation when change in position involved only reduction in potential salary scale, duties, and employees under plaintiff's supervision).  Additionally, in Rosado Quiñones v. Toledo, 528 F.3d 1, 5 (1st Cir. 2008), the First Circuit has upheld the district court's dismissal, upon summary judgment, of plaintiff's due process claim where he had been demoted, but his salary was not reduced. Although plaintiff was transferred from a specialized plainclothes unit to a uniformed police officer, the lowest rank in the police department, the court reasoned that he had only been deprived of his particular job functions, in which he had no recognized property interest.  Id. at 4-5.  But see Natal Rosario, 609 F. Supp. 2d at 202 (denying motion to dismiss police officer's due process claim, finding that his transfer from detective unit to field operations division was demotion because of the inferior job responsibilities, even though the complaint did not mention a reduction in salary).  In plaintiff's case, she does not, however, elaborate on what the demotion entailed and whether it involved a reduction in salary.  She also does not state what position she was demoted to.  However, she does say that the new position was lower ranked.  Therefore,

making all reasonable inferences in plaintiff's favor, it is plausible that she was deprived of her right to continued employment if her salary was reduced when she was removed from her position and demoted to a lower position.

In order to make out the final element of her due process claim, plaintiff must show that she was not provided with constitutionally adequate process. See Maymi v. Puerto Rico Ports Auth., 515 F.3d 20, 29 (1st Cir. 2008). Generally, adequate process requires notice and an opportunity to be heard prior to the termination of employment. See Ramos Borges v. Puerto Rico Dep't of Health, 740 F. Supp. 2d 262, 276 (D.P.R. 2010) (citations omitted); 3 L.P.R.A. § 1462e(4) ("The appointing authority may only . . . remove any career employee for just cause, after having given written notice of the bringing of charges and . . . his/her right to request a hearing before action is taken."). The complaint states that Rodríguez informed plaintiff of her demotion before it took place, but it does not state that plaintiff was given written notice or the opportunity to request a hearing. However, plaintiff's complaint does not specifically allege that she was *not* provided with notice and an opportunity to be heard, nor does she allege, even generally, that she did not receive the process that she was due.[24] Therefore, plaintiff has not plausibly shown that she did not receive adequate process prior to her termination, as she is required to do under the standard set forth in Iqbal, 129 S. Ct. at 1940, and Twombly, 550 U.S. at 559. Accordingly, it is recommended that defendants' motion to dismiss plaintiff's due process claim be granted.[25]

---

[24] Once again, the only allegation with respect to due process is conclusory, namely, that "[d]efendants, through their acts and/or omissions, acting under color of law, deprived plaintiff of her rights to . . . due process of law." (Docket No. 67, § 61).

[25] In support of her opposition, plaintiff has attached four documents: three of paystubs showing her salary earned at the PRFD and a letter from defendant Rodríguez notifying her of the alleged demotion, dated September 29, 2010. (Docket No. 31-1). Plaintiff claims that these documents show that her salary and rank were affected by the alleged demotion, in violation of her due process rights. The undersigned has declined to consider the attached documents at this stage of the proceedings. Documents outside the pleadings cannot be considered in deciding a motion to dismiss, unless the district court decides, in its discretion, to decide the motion under the more stringent Rule 56

**F.      Miscellaneous Claims: Fourth Amendment, § 1985, Article 1802**

Plaintiff concedes in her opposition that her Fourth Amendment rights were not violated and that the inclusion of such a claim was an "inadvertent mistake."  (D.E. 31, p. 10).  It is thus hereby recommended that the Fourth Amendment claim against all defendants be dismissed. Additionally, plaintiff has presented no argumentation regarding Article 1802 of the Puerto Rico Civil Code and it is not mentioned anywhere in her complaint except for the jurisdictional statement.  Therefore, plaintiff's Article 1802 claim should also be dismissed.

Although plaintiff's complaint also provides no further mention of 42 U.S.C. § 1985 after the jurisdictional statement, she attempts to argue in her opposition (in a section titled "Conspiracy Claim Under 42 USC Sec. 4185 [sic]") that defendants Rodríguez and Hernández had a "common goal" of demoting plaintiff after she filed her complaints.  (Docket No. 31 at 19-20, ¶ 41).  Even if this conclusory allegation were contained in plaintiff's complaint, which it is not, it would not suffice to establish a Section 1985 claim against these two defendants. Section 1985 prohibits "two or more persons in any State or Territory [from] conspir[ing to] ... depriv[e] ... any person or class of persons of the equal protection of the laws."  Perez-Sanchez v. Public Bldg. Auth., 531 F.3d 104, 107 (1st Cir. 2008).  To prevail on such a claim, plaintiff must allege that (1) a conspiracy existed, (2) the defendants had "a conspiratorial purpose to deprive

---

summary judgment standard.  Garita Hotel Ltd. Partnership v. Ponce Federal Bank, F.S.B., et. al., 958 F.2d 15, 18-19 (1st Cir. 1992).  There is no reason to convert the instant motion into a motion for summary judgment, nor does plaintiff move the court to do so; rather, she cites other exceptions under which a court may consider external documents: "documents the authenticity of which are not disputed by the parties; [ ] official public records; [ ] documents central to plaintiffs' claim; or [ ] documents sufficiently referred to in the complaint."  Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co., 267 F.3d 30, 34 (1st Cir. 2001) (citing Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993)); see Docket No. 31 at 3-4.  Plaintiff merely quotes the aforecited case law, but does not explain how the documents she has attached fall within any of those exceptions.  (Docket No. 31 at 3-4, ¶¶ 6-8).  In fact, they do not. Plaintiff's paystubs and the letter from her supervisor are not public documents simply because she is a public employee.  Moreover, the complaint does not refer to these documents and, although they support her claim, they are not central to it.  Finally, even if these documents could be considered under Rule 12(b)(6), the court would be obliged to disregard them anyway, as they are in the Spanish language and no certified English translation has been submitted.  See Local Rule 5(g) (requiring any document in a language other than English to be submitted with a certified English translation); Aguiar-Carrasquillo v. Agosto-Alicea, 445 F.3d 19, 24 (1st Cir. 2006) (refusing to consider documents in any language other than English).

the plaintiff of the equal protection of the laws," (3) the defendants committed an "overt act in furtherance of the conspiracy," and (4) the plaintiff suffered "injury to person or property, or a deprivation of a constitutionally protected right." Id. at 107. Plaintiff has not alleged any facts that show or give rise to an inference that there was a conspiracy between Hernández and Rodríguez or that they had a conspiratorial purpose to deprive plaintiff of her rights. The complaint merely alleges that Hernández filed a complaint against plaintiff and that Rodríguez subsequently demoted her. There is no indication that there was even any communication between the two defendants, aside from Hernández's complaints to Rodríguez about plaintiff's work performance. Therefore, it is recommended that plaintiff's Section 1985 claim also be dismissed.

### G.      Qualified Immunity

Defendant Rodríguez has also filed a "motion for qualified immunity." In that motion, Rodríguez argues that she is entitled to qualified immunity, and thus absolved of liability, as to plaintiff's constitutional claims. A state official is entitled to qualified immunity when a plaintiff has shown that a constitutional right was violated, but the court determines that the right was not clearly established and that a reasonable officer could have believed that the conduct in question was lawful. See Saucier v. Katz, 533 U.S. 201 (2001). Because plaintiff failed to sufficiently plead either a First or Fourteenth Amendment claim, she has not shown that her constitutional rights were violated. Therefore, it is not necessary to determine whether Rodríguez would be entitled to qualified immunity on those claims. See Pearson v. Callahan, 555 U.S. 223, 818-819 (2009) (noting that courts should generally decide first whether there has been a constitutional violation where the answer to that question is unambiguous). Accordingly, it is recommended that Rodríguez's motion for qualified immunity be deemed moot.

### V.    CONCLUSION

Based on the foregoing analysis, it is hereby RECOMMENDED that:

- All First Amendment and Fourteenth Amendment claims, as well as all claims under Puerto Rico Laws 17, 69, 115, and 426 against the Commonwealth, PRFD, and Rodríguez and Hernández in their official capacities be DISMISSED on sovereign immunity grounds.

- All claims under Puerto Rico Law 100 against the Commonwealth and PRFD be DISMISSED, as Law 100 does not apply to the Commonwealth government or to a Commonwealth agency not operating as a private business or enterprise.

- All claims pursuant to the Fourth Amendment be DISMISSED, as plaintiff has acknowledged that their inclusion in the complaint was a mistake.

- Any Title VII claims against Rodríguez and Hernández individually, to the extent the complaint asserts them at all, be DISMISSED as there is no individual liability under Title VII.

- All claims against Rodríguez and Hernández in their personal capacities under the First Amendment, the Fourteenth Amendment, and Puerto Rico Laws 17, 69, 100 be DISMISSED for failure to state a claim upon which relief can be granted.

- All claims under the Whistleblower Protection Act of 1989, Pub. L. 101-12, codified at 5 U.S.C. § 1213 *et seq*., be DISMISSED for failure to state a claim upon which relief can be granted in light of the fact that no federal employees are involved in this case.

- Any claims against Hernández under Puerto Rico Laws 115 and 426 be DISMISSED for failure to state a claim upon which relief can be granted.

- All claims against Rodríguez and Hernández under 42 U.S.C. § 1985 be DISMISSED for failure to state a claim upon which relief can be granted.

- The prospective injunctive relief requested be DENIED as the same lacks specificity as to what action in particular plaintiff wishes the court to enjoin and no allegation of ongoing harm has been made.

WHEREFORE, Hernández's motion to dismiss (Docket No. 24) should be GRANTED. It is further RECOMMENDED that the motion to dismiss filed by the Commonwealth, the PRFD (Docket No. 23), and Rodríguez be GRANTED in part and DENIED in part.  It is also RECOMMENDED that Rodríguez's motion requesting dismissal of claims against her on qualified immunity (Docket No. 36) be deemed MOOT.

In sum, it is recommended that the following claims survive the motions to dismiss:

- Plaintiff's Title VII retaliation claims against the Commonwealth and the PRFD

- Plaintiff's Law 115 claim against Rodríguez in her individual capacity; and

- Plaintiff's Law 426 claim against Rodríguez in her individual capacity.

The parties have fourteen (14) to file objections to this Report and Recommendation. Failure to file the same waives the right to appellate review.  Fed. R. Civ. P. 72(b)(2); Fed. R. Civ. P. 6(c)(1)(B); Local Rule 72(d); see also Henley Drilling v. McGee, 36 F.3d 143, 150-51 (1st Cir. 1994); United States v. Valencia, 792 F.2d 4, 6 (1st Cir. 1986).

IT IS SO RECOMMENDED.

In San Juan, Puerto Rico this 1st day of May, 2012.

/s Marcos E. López
U.S. Magistrate Judge