IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

NELIDA RAMOS-SANTOS,

**Plaintiff**,

v.

JEREMIAS HERNANDEZ-NOGUERAS,
CARMEN G. RODRIGUEZ-DIAZ, CUERPO
DE BOMBEROS DE PUERTO RICO,
COMMONWEALTH OF PUERTO RICO,
JOHN DOE, RICHARD DOE, PETER
ROE, NANCY DOE, CARL ROE,

**Defendants**.

CIVIL NO. 11-1105 (FAB)

OPINION AND ORDER[1]

BESOSA, District Judge.

Before the Court is the Report and Recommendation ("R&R"),
(Docket No. 117), regarding two motions to dismiss:  one filed by
defendants Carmen G. Rodriguez-Diaz ("Rodriguez"), the Cuerpo de
Bomberos de Puerto Rico (Puerto Rico Fire Department) ("PRFD"), and
the Commonwealth of Puerto Rico ("the Commonwealth"), (Docket
No. 23); the other, filed by Jeremias Hernandez-Nogueras
("Hernandez") (Docket No. 24).  Also before the Court is defendant
Rodriguez's unopposed motion alleging qualified immunity (Docket
No. 36).  Having considered the magistrate judge's recommendations,
as well as plaintiff's objections to the R&R and defendants'

---

[1] Jared Killeen, a second-year student at Brooklyn Law School,
assisted in the preparation of this Opinion and Order.

opposition to plaintiff's objections, (Docket Nos. 135 & 144), the Court **ADOPTS** the findings and recommendations of the magistrate judge.

## I.   Background

### A.   Factual Background

The Court declines to rehash all of the facts that are contained in the magistrate judge's R&R.  Instead, the Court provides a brief overview of the facts, and will supply more details as needed.  At the motion to dismiss stage under Federal Rule of Civil Procedure 12(b)(6) (Rule "12(b)(6)"), a court must accept the "well-pleaded facts as they appear in the complaint, extending [the] plaintiff every reasonable inference in his [or her] favor."  Medina-Claudio v. Rodriguez-Mateo, 292 F.3d 31, 34 (1st Cir. 2002).  Therefore, the Court relies on the statement of facts as it appears in plaintiff's second amended complaint. (Docket No. 67.)

Nelida Ramos-Santos ("plaintiff") is a career employee with the Commonwealth and has worked for the PRFD since 1988.  Id. at ¶ 20.  After a series of promotions, plaintiff was appointed Head of Administration of the PRFD by defendant Rodriguez in March, 2010.  Id. at ¶¶ 20-27.  Defendant Rodriguez herself had recently been selected as Chief of the PRFD.  Id. at ¶ 27.  Shortly thereafter, defendant Hernandez was appointed Transportation

Director of the PRFD and assigned to the same office building as plaintiff.  Id. at ¶ 29.

Upon being introduced to plaintiff sometime in July, 2010, defendant Hernandez began what plaintiff describes as "a constant pattern of flirtatious remarks, constant invitations to go out to lunch, constant phone calls to her office, winks, and very frequent visits to plaintiff's office seeking help in matters that he himself could easily resolve."  Id. at ¶ 29.  The magistrate judge notes that plaintiff's complaint fails to describe in any detail the alleged flirtations and remarks attributed to defendant Hernandez.  (Docket No. 117 at p. 3.)

In mid-July, 2010, both plaintiff and defendant Hernandez attended a League of United Latin American Citizens ("LULAC") convention in New Mexico.  (Docket No. 67 at ¶¶ 31, 33.)  On July 13, 2010, before leaving for the convention, plaintiff received a phone call from Manolo Fontan ("Fontan"), a service manager from Guaraguao Truck Sales, a supplier for the PRFD.  Id. at ¶ 31.  Fontan told plaintiff that defendant Hernandez had asked him to provide $5,000.00 to cover the cost of the PRFD employees' tickets to New Mexico for the LULAC convention.  Id.  Fontan said that he had only enough money to buy one round-trip ticket, and that he had mailed a check to PRFD headquarters.  Id.  When plaintiff later received the check, she quickly informed defendant

Rodriguez of its "illegality." <u>Id.</u> at ¶ 32. Defendant Rodriguez said to plaintiff, "pay [for] the plane ticket and I will take care of returning the money later." <u>Id.</u>

Upon arriving in New Mexico for the convention, a number of PRFD employees, including plaintiff and defendant Hernandez, stayed at the same hotel. <u>Id.</u> at ¶ 33. On July 16, 2010, plaintiff and defendant Hernandez were part of a group of PRFD employees gathered around the hotel pool. <u>Id.</u> Defendant Hernandez made an unkind remark to plaintiff about a PRFD captain named Luis Otto, whom he referred to as "that Popular," a comment which plaintiff characterizes as showing "a patent discrimination for political reasons." <u>Id.</u> Uncomfortable, plaintiff retired to her hotel room. <u>Id.</u> at ¶ 34. An hour later, defendant Hernandez called plaintiff in her room, inquiring whether she was upset with him. <u>Id.</u> at ¶ 35. Plaintiff responded by telling defendant Hernandez to refrain from calling her. <u>Id.</u> At around midnight that same evening, defendant Hernandez called plaintiff again; he told her that he was lonely and asked if she would like to come up to his room. <u>Id.</u> at ¶¶ 35-36. He also told plaintiff, in an excited manner, that "what he had for her was big and fat, referring to his penis, that she would like it, that he was crazy about giving her a kiss and that one of these days he would steal one from her." <u>Id.</u> at ¶ 36.

During the LULAC convention, defendant Hernandez
commented among members of the group that he was plaintiff's
"bodyguard" and had to stay close by her because he was "assigned
to this mission." Id. at ¶ 37.  Plaintiff told defendant Hernandez
to refrain from making such comments, reminding Hernandez that she
was married.  Id. at ¶ 38.  Nonetheless, defendant Hernandez
persisted in asking plaintiff about her marital status despite
plaintiff's refusal to engage in conversation.  Id.

On August 16, 2010, defendant Hernandez and PRFD General
Counsel Efren Gonzales prepared a complaint against plaintiff
alleging sexual harassment.[2] Id. at ¶ 39.  The next day, defendant
Hernandez told plaintiff that she seemed different ever since he
had refused her repeated requests to go to her room at the LULAC

---

[2] It is unclear whether defendant Hernandez's complaint was an
internal remonstration within the PRFD, an Equal Employment
Opportunity Commission ("EEOC") complaint, or another type of
administrative grievance.  (Docket No. 117 at p. 5.)   Indeed,
plaintiff's statement of facts does little to clarify this matter,
leaving to speculation not only the nature of the complaint, but
any reasonable explanation as to why defendant Hernandez might make
such an accusation.  One possible answer is that Hernandez was
merely responding in retaliation to complaints filed previously by
plaintiff.  Yet plaintiff's intimation that she had already
submitted her own complaints by August 23, 2010 (Docket No. 67 at
¶ 41) directly contradicts statements made elsewhere that she did
not file an administrative complaint until September 14, 2010, or
an EEOC complaint until September 30, 2010. (Docket No. 117 at
p. 5.)   Thus, the Court cannot assume that plaintiff filed any
complaints before defendant Hernandez submitted his grievance on
August 16, 2010.

convention.  Id.  At the same time, defendant Hernandez also began
complaining to defendant Rodriguez about plaintiff's incompetence
and failure to perform her duties.  Id. at ¶ 41.

On September 14, 2010, plaintiff filed an administrative
complaint against defendant Hernandez alleging sexual harassment
and acts of retaliation.  Id. at ¶ 42.  Defendant Rodriguez told
plaintiff "that she was being demoted to a lower rank position" on
September 29, 2010.[3]  Id. at ¶ 43.  On the same day, plaintiff was
excluded from a meeting she usually attended.  Id.  Plaintiff filed
a complaint with the EEOC on September 30, 2010.  Id. at ¶ 44.

Between October 1 and December 27, 2010, "defendants
gradually . . . demoted [plaintiff] and withdrew [her] work
functions."  Id. at ¶ 45.  Plaintiff was moved to a different
office with a damaged chair and without a working air conditioner;
she was denied Internet access and admission to her assigned
parking spot; and she was forced to maintain the facilities
herself, mopping a filthy and unhygienic floor.  Id.  Moreover,

---

[3] Plaintiff does not provide the title of this lower rank
position and does not describe in any detail a change in her
administrative duties.  In her opposition to defendants' motions to
dismiss, however, plaintiff does include several documents
demonstrating a diminution in rank, including paystubs and a letter
from defendant Rodriguez notifying her of the alleged demotion.
(See Docket No. 31.)  Nonetheless, the magistrate judge correctly
denies consideration of these materials because they were submitted
to the court in Spanish without certified English translations
pursuant to Local Rule 5(g.)  (See Docket No. 117 at p. 34.)

whenever plaintiff encountered defendant Hernandez in the PRFD
office building, he greeted her with "menacing and threatening
demeanors [sic]." _Id._ at ¶ 46.  Despite claiming that she was
asked to leave the agency, plaintiff is still employed at the PRFD.
(Docket No. 117 at p. 6.)

  **B.   Procedural Background**

       On September 15, 2011, plaintiff filed a second amended
complaint against defendants Hernandez and Rodriguez in their
individual and official capacities, the Commonwealth, the PRFD, and
a number of unnamed defendants.  (Docket No. 67.)  Plaintiff brings
claims of sexual harassment and retaliation under a variety of
federal and local statutes, to wit, Title VII of the Civil Rights
Act of 1964, 42 U.S.C. § 1983, the First and Fourteenth Amendments
of the U.S. Constitution, Federal and Commonwealth whistleblower
laws, and Puerto Rico Laws 17, 69, 100, 115 and 426.[4]  _Id._ at ¶¶ 1,
2, 50, 56, 59-61.  Plaintiff seeks injunctive relief, compensatory
damages, interest in back pay, punitive damages, attorneys fees and
the reimbursement of litigation costs.  _Id._ at ¶ 1.

---

       [4] In addition to these statutes, plaintiff also cites the
Fourth Amendment and 42 U.S.C. §§ 1985 and 1988.  (Docket No. 67
at ¶ 1.)  The R&R correctly notes that these statutes are either
invoked by plaintiff in error, or that they are not sufficiently
discussed by plaintiff to justify the Court's consideration.
(Docket No. 117 at p. 34.)

On April 5, 2011, defendants Rodriguez, the Commonwealth
and the PRFD filed a motion to dismiss pursuant to Rule 12(b)(6).
(Docket No. 23.)  On April 15, 2011, defendant Hernandez filed a
separate motion to dismiss.  (Docket No. 24.)  In sum, defendants
argue that all of plaintiff's claims that are not barred by the
Eleventh Amendment ought to be dismissed for failure to state a
cause of action.  In addition, on May 23, 2011, defendant Rodriguez
filed a motion seeking qualified immunity, reasoning that plaintiff
had failed to plead a plausible constitutional claim.  (Docket
No. 36.)

Plaintiff filed an opposition to defendants' motions to
dismiss on April 25, 2011.  (Docket No. 31.)  In addition to
refuting defendants' arguments, plaintiff includes in her response
several documents supporting her claim that she was demoted in
retaliation for her administrative complaints concerning Hernandez.
Specifically, plaintiff submits Spanish-language paystubs showing
a change in salary and rank, arguing that these establish evidence
of a property interest directly affected by the demotion.  (See
Docket No. 31.)  On May 13, 2011, defendants Rodriguez, the
Commonwealth, and the PRFD filed a reply to plaintiff's opposition
to their motion to dismiss, arguing that plaintiff has failed to
support any of her claims with sufficient facts.  (Docket No. 35.)

Pursuant to a referral order issued by the Court, Magistrate Judge Marcos E. Lopez filed an R&R with regard to the motions to dismiss and the motion for qualified immunity on May 1, 2012.  (Docket No. 117.)  First, Magistrate Judge Lopez recommends that defendant Hernandez's motion to dismiss be **GRANTED**.  Second, he recommends that defendants Rodriguez, the Commonwealth, and the PRFD's motion to dismiss be **GRANTED IN PART AND DENIED IN PART**.  Finally, he recommends that defendant Rodriguez's motion requesting dismissal of claims against her under qualified immunity be deemed **MOOT**.

Specifically, the R&R recommends that:

- All First and Fourteenth Amendment claims, as well as claims under Puerto Rico Laws 17, 69, 115, and 426 against defendants the Commonwealth and the PRFD, and against defendants Rodriguez and Hernandez in their official capacities, be DISMISSED on sovereign immunity grounds;

- All claims under Puerto Rico Law 100 against the Commonwealth and PRFD be DISMISSED;

- Any Title VII claims against defendants Rodriguez and Hernandez individually, to the extent the complaint asserts them at all, be DISMISSED as there is no individual liability under Title VII;

- All claims against defendants Rodriguez and Hernandez in their personal capacities under the First Amendment, the Fourteenth Amendment, and Puerto Rico Laws 17, 69, and 100 be DISMISSED for failure to state a claim upon which relief can be granted;

- All claims under the Whistleblower Protection Act of 1989, Pub. L. 101-12, codified at 5 U.S.C. § 1213 *et seq.,* be DISMISSED for failure to state a claim upon which relief can be granted;

- Any claims against defendant Hernandez under Puerto Rico Laws 115 and 426 be DISMISSED for failure to state a claim upon which relief can be granted;

- All claims against defendants Rodriguez and Hernandez under 42 U.S.C. § 1985 be DISMISSED for failure to state a claim upon which relief can be granted;

- The prospective injunctive relief requested be DENIED because it lacks specificity as to what action in particular plaintiff wishes the Court to enjoin and no allegation of ongoing harm has been made; and

- Defendant Rodriguez's request for qualified immunity be deemed MOOT because plaintiff failed to show that her constitutional rights had been violated.

Moreover, the magistrate judge recommends that the following claims survive the motion to dismiss:

- Plaintiff's Title VII retaliation claims against defendants Commonwealth and PRFD.
- Plaintiff's Law 115 claim against defendant Rodriguez in her individual capacity; and
- Plaintiff's Law 426 claim against defendant Rodriguez in her individual capacity.

Plaintiff filed partial objections to the R&R on May 19, 2012. (Docket No. 135.) Plaintiff argues that the magistrate judge committed error by recommending dismissal of her Fourteenth and First Amendment claims. Id. at ¶¶ 18 & 34. Plaintiff insists (1) that she has demonstrated "a hostile-work environment due to sexual harassment" pursuant to the Equal Protection Clause and Puerto Rico law; and (2) that she has demonstrated a violation of her First Amendment right to free speech.

On June 4, 2012, defendants Hernandez, Rodriguez, the Commonwealth, and the PRFD filed a joint opposition to plaintiff's objection to the R&R. (Docket No. 144.) Defendants allege that

plaintiff's filing of her objection was untimely.  Id. at p. 2.
Although plaintiff did submit her objection several days after the
original deadline, the Court granted plaintiff's motion for leave
to file the objection *instanter*.  (See Docket Nos. 134 & 137.)

## II.  Legal Standards

### A.    Standard under 28 U.S.C. § 636(b)(1)

A district court may refer a case to a magistrate judge
for a report and recommendation.  See 28 U.S.C. § 636(b)(1)(B);
Fed.R.Civ.P. 72(b); Loc. Rule 72(b).  Any party adversely affected
by the report and recommendation may file written objections within
fourteen days of being served with the magistrate judge's report.
See 28 U.S.C. § 636(b)(1).  A party that files a timely objection
is entitled to a *de novo* determination of "those portions of the
report or specified proposed findings or recommendations to which
specific objection is made."  Sylva v. Culebra Dive Shop, 389
F.Supp.2d 189, 191-92 (D.P.R. 2005) (citing United States v.
Raddatz, 447 U.S. 667, 673 (1980)).  Failure to comply with this
rule precludes further review.  See Davet v. Maccorone, 973 F.2d
22, 30-31 (1st Cir. 1992).  In conducting its review, the court is
free to "accept, reject, or modify, in whole or in part, the
findings or recommendations made by the magistrate judge."
28 U.S.C. § 636 (a)(b)(1).  Templeman v. Chris Craft Corp., 770
F.2d 245, 247 (1st Cir. 1985); Alamo Rodriguez v. Pfizer

Pharmaceuticals, Inc., 286 F.Supp.2d 144, 146 (D.P.R. 2003).

Furthermore, the Court may accept those parts of the report and

recommendation to which the parties do not object.   See

Hernandez-Mejias v. Gen. Elec., 428 F.Supp.2d 4, 6 (D.P.R. 2005)

(citing Lacedra v. Donald W. Wyatt Detention Facility, 334

F.Supp.2d 114, 125-126 (D.R.I. 2004)).

### B.   Standard Under Rule 12(b)(6)

Rule 12(b)(6) allows a court to dismiss a complaint when

it fails to state a claim upon which relief can be granted.

Fed.R.Civ.P.  12(b)(6).   When considering a motion under

Rule 12(b)(6), a court must accept the "well-pleaded facts as they

appear in the complaint, extending [the] plaintiff every reasonable

inference in his [or her] favor." Medina-Claudio, 292 F.3d at 34.

"[A]n adequate complaint must provide fair notice to the defendants

and state a facially plausible legal claim." Ocasio-Hernandez v.

Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011).  When faced with a

motion to dismiss, "[a] plaintiff is not entitled to 'proceed

perforce' by virtue of allegations that merely parrot the elements

of the cause of action." Id. at 12 (quoting Ashcroft v. Iqbal, 129

S.Ct. 1937, 1950 (2009)).   Any "[n]on-conclusory factual

allegations in the complaint [, however,] must . . . be treated as

true, even if seemingly incredible." Id. (citing Iqbal, 129 S.Ct.

at 1951).  Where those factual allegations "'allow[ ] the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged,' the claim has facial plausibility." <u>Id.</u> (quoting <u>Iqbal</u>, 129 S.Ct. at 1949). Furthermore, a court may not "attempt to forecast a plaintiff's likelihood of success on the merits; 'a well-pleaded complaint may proceed even if . . . a recovery is very remote and unlikely'." <u>Id.</u> at 13 (citing <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 556 (2007)). The relevant inquiry, therefore, "focuses on the reasonableness of the inference of liability that the plaintiff is asking the court to draw from the facts alleged in the complaint." <u>Id.</u>

According to Rule 12(b)(6), a court must base its determination solely on the material submitted as part of the complaint or central to it. <u>Fudge v. Penthouse Int'l. Ltd.</u>, 840 F.2d 1012, 1015 (1st Cir. 1988). Generally, "a court may not consider documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment." <u>Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co.</u>, 267 F.3d 30, 33 (1st Cir. 2001). "When . . . a complaint's factual allegations are expressly linked to - and admittedly dependent upon - a document (the authenticity of which is not challenged), [however,] that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6)." <u>Beddall v. State St. Bank</u>

& Trust Co., 137 F.3d 12, 17 (1st Cir. 1998) (internal citation

omitted).  This is especially true where the plaintiff has "actual

notice . . . and has relied upon these documents in framing the

complaint."  Watterson v. Page, 987 F.2d 1, 4 (1st Cir. 1993).

## III. Discussion

### A.    Plaintiff's Objections

Plaintiff objects that the magistrate judge erred by

recommending dismissal of her Fourteenth and First Amendment

claims.  (Docket No. 135 at ¶¶ 18 & 34.)  Plaintiff insists

(1) that she has demonstrated "a hostile-work environment due to

sexual harassment" pursuant to the Equal Protection Clause and

Puerto Rico law; and (2) that she has demonstrated a First

Amendment violation of her free speech.  By limiting her objection

to the prenominate concerns, any other objection is waived.  See

D.P.R. Loc.Civ.R. 7(b).  The Court will consider both objections in

turn.

### i.    Hostile Environment Claim

Plaintiff objects that the magistrate judge erred in

his recommendation to dismiss plaintiff's hostile-environment claim

against defendant Hernandez under the Equal Protection clause, and

Puerto Rico Laws 17, 69, and 100.  (Docket No. 135 at ¶¶ 4-18.)

Specifically, plaintiff objects to the magistrate judge's

determination that under the hostile-environment standard, the

facts alleged by plaintiff in her complaint fail to establish that she was subjected to a hostile environment due to sexual harassment. Id. at ¶ 5. Plaintiff argues in favor of a broader consideration of evidence under an incomplete four-point standard of hostile-environment harassment. Id. at ¶¶ 8-11, 12. Plaintiff's arguments are unpersuasive. First, by requesting that the Court consider evidence related to the separate and distinct retaliation claim against defendant Rodriguez, plaintiff impermissibly conflates that claim with the hostile-environment claim against defendant Hernandez. Id. at ¶¶ 8-11. Second, the incomplete four-point standard recommended by plaintiff is incorrect because it neglects two important criteria employed by the First Circuit Court of Appeals to identify a hostile environment. Id. at ¶¶ 12. The Court now addresses these two significant errors in plaintiff's argument.

### a.   Conflation of Separate Claims

Plaintiff argues that "[s]he was placed in a hostile environment as a *reaction and retaliation* to her having complained of sexual harassment . . . by Hernandez." (Docket No. 135 at ¶ 7.) (emphasis added.) In support of this allegation, plaintiff submits facts contained in paragraphs forty-two through forty-seven of her second amended complaint detailing the alleged demotion suffered by plaintiff in retaliation to her filing a

sexual-harassment grievance.  (See Docket No. 67.)  Plaintiff
ignores the fact that sexual harassment and retaliatory harassment
are distinct causes of action, governed by separate and independent
statutes and common law standards.  See 42 U.S.C. §§ 2000e-2
& 2000e-3(a); Faragher v. City of Boca Raton, 524 U.S. 775 (1998);
Burlington N. and Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006);
Noviello v. City of Boston, 398 F.3d 76 (1st Cir. 2005).  By
supporting her sexual harassment claim against defendant Hernandez
with evidence specific to her retaliation claim against defendant
Rodriguez, plaintiff impermissibly conflates two distinct causes of
action against two separate defendants.

        The First Circuit Court of Appeals has
acknowledged that when "an individual sexually harasses a victim
and then engages in non-sexual retaliatory harassment, the sexual
and non-sexual harassment arguably may be part and parcel of the
same violation."  Noviello, 398 F.3d at 87; see Perez-Cordero v.
Wal-mart Puerto Rico, Inc., 656 F.3d at 32 (1st Cir. 2011) (a
single-defendant case holding that where "evidence can reasonably
be viewed as demonstrating either discriminatory animus or
retaliatory animus, [the court] may consider the same evidence in
assessing the sufficiency of both the plaintiff's claims").
Nonetheless, the Noviello Court has qualified this statement,
noting that "[t]he majority of cases are not cut from this seamless

cloth.  Even when retaliation is derivative of a particular act of
[sexual] harassment, it normally does not stem from the same
animus.  Most often, retaliation is a distinct and independent act
of discrimination . . . "  <u>Noviello</u>, 398 F.3d at 87.  This
distinction between sexual and retaliatory harassment is especially
sharp when the plaintiff has asserted different claims against two
separate defendants.  In <u>Noviello</u>, for instance, an act of sexual
harassment was committed by one party, while retaliatory harassment
was "orchestrated by a cohort of different individuals."  <u>Id.</u>
Because the offensive behavior of both parties did not stem from
the same animus, the court of appeals viewed the sexual and
retaliatory harassment as "separate and independent harms."  <u>Id.</u>
That is the case here, where plaintiff asserts a sexual harassment
claim against defendant Hernandez and a retaliatory harassment

claim against defendant Rodriguez.[5]  It is clear that the alleged misdeeds of both parties are distinct, that they do not arise from the same animus, and therefore that they must not be condensed into a "mixed-motive" claim.  Id. at 88.  Moreover, plaintiff cannot prop up her failing sexual harassment claim with the more robust retaliatory harassment allegations against defendant Rodriguez. Id. (holding that "[t]he plaintiff cannot rely on the second [claim] to revive the first").  For these reasons, plaintiff's objections are undermined by her conflation of two distinct causes of action.

### b.   Incorrect Hostile-Environment Standard

Plaintiff's objections to the R&R reveal a second error by adopting an incomplete standard for hostile-environment harassment.  Plaintiff states that "[i]n order to

---

[5] The magistrate judge notes that "[p]laintiff's complaint does not specify which of her many claims are asserted against which of the four named defendants . . . "  Therefore, the R&R interprets the complaint as asserting "all claims against all defendants."  (Docket No. 117 at p. 7.)  Even so, the Court may safely deduce from the R&R which claim belongs with which defendant.  The sexual harassment claim, on the one hand, is undoubtedly asserted against defendant Hernandez, the sole perpetrator of lascivious misconduct. (See Docket No. 67 at ¶¶ 29, 36-37.)  The retaliatory harassment claim, on the other hand, is valid only against defendant Rodriguez, and not Hernandez; the magistrate judge correctly states that because defendant Hernandez "had no decision-making authority over plaintiff's employment, he cannot be held responsible for her demotion and change in work duties." (Docket No. 117 at p. 25.)

prevail in an abusive or hostile environment case when it is created by a supervisor[6] the plaintiff must show that (1) she is a member of a protected group; (2) she was subjected to unwanted conduct based on sex; (3) the conduct was objectively severe . . .; and (4) she subjectively perceived conduct to be abusive." Id. No matter how compelling the results of this analysis may ultimately be, they must be discarded because plaintiff fails to address all six points typically included in the First Circuit standard. Notably, plaintiff's standard lacks the requirement that an employer be aware of the alleged harassment.

While the Supreme Court has declined to articulate a multi-point standard, it has provided a basic framework according to which the standard may be developed. The First Circuit Court of Appeals has developed a six-point standard for hostile-environment harassment based on Supreme Court jurisprudence. See Faragher, 524 U.S. 787-89; Harris v. Forklift Sys., Inc., 510 U.S. 17, 20-23 (1993); Meritor Sav. Bank, FSB v.

---

[6] Plaintiff, perhaps inadvertently, refers to defendant Hernandez as her *supervisor* (Docket No. 135 at ¶ 12.) Nowhere in her complaint, however, does plaintiff claim that defendant Hernandez occupied a supervisory role in relation to her; nor does she allege that defendant Hernandez commanded any sort of authority or influence over plaintiff that might qualify as supervisory in nature. Again, plaintiff conflates her hostile-environment claim against her co-worker, defendant Hernandez, with her retaliation claim against her supervisor, defendant Rodriguez.

Vinson, 477 U.S. 57, 65-73 (1986).  Under either the general Supreme Court framework or the narrower First Circuit standard, plaintiff's hostile-environment claim fails.

According to the First Circuit standard, a plaintiff must meet six criteria in order to succeed on a hostile-environment claim:  (1) that she is a member of a protected class; (2) that she was subjected to unwelcome sexual harassment; (3) that the harassment was based upon sex; (4) that the harassment was sufficiently severe or pervasive so as to alter the conditions of plaintiff's employment; (5) that sexually objectionable conduct was both objectively and subjectively offensive; and (6) that some basis for employer liability has been demonstrated.  See Perez-Cordero, 656 F.3d at 27; Agusty-Reyes v. Dept. of Educ. of Puerto Rico, 601 F.3d 45, 52 (1st Cir. 2010); O'Rourke v. City of Providence, 235 F.3d 713, 728 (1st Cir. 2001).  The six-point standard may be applied when a hostile environment has been created either by a supervisor or by a non-supervisory co-worker.  See Perez-Cordero, 656 F.3d at 27; Agusty-Reyes, 601 F.3d at 52 (applying standard to supervisor); see Valentin-Almeyda v. Municipality of Aguadilla, 447 F.3d 85, 94 (1st Cir. 2006); O'Rourke, 235 F.3d at 728 (applying standard to non-supervisors).

Plaintiff fails to meet at least one of the elements of the First Circuit standard.  Upon considering the facts

Civil No. 11-1105 (FAB)                                                22

and extending "every reasonable inference" in plaintiff's favor,

the Court still finds that plaintiff failed to satisfy point (6) of

the First Circuit standard.[7]  Medina-Claudio, 292 F.3d at 34.  As

the R&R has shown, there is no basis for employer liability because

the allegations in the complaint provide no reason to believe that

defendant Rodriguez or any other supervisor knew or should have

known about Hernandez's alleged harassment.  (Docket No. 117 at

p. 21.)  Plaintiff is precluded from claiming hostile-environment

harassment by a non-supervisory co-worker under the First Circuit

standard because she fails to show at least one element of the

test.

         Even under the more generous Supreme Court

framework, plaintiff's claim fails.  Indeed, the magistrate judge

employs a more general standard, mirroring that of the Supreme

Court, when considering plaintiff's hostile environment claim.

Rather than use the six-point standard set forth by the First

Circuit, the magistrate judge maintains that a plaintiff may bring

a hostile-environment claim where "sexual harassment [is] so

_____

         [7] This is not to say that plaintiff would be able to meet the
other requirements set forth in the First Circuit standard,
especially points (2) through (5); it is only to assert that there
is no doubt the magistrate judge correctly determined that the
allegations in the complaint "do not give rise to a reasonable
inference that defendant Rodriguez or any other supervisory
personnel knew or should have known about defendant Hernandez's
behavior prior to September 14, 2010."  (Docket No. 117 at p. 21.)

'severe and pervasive' as to 'alter the condition [of the victim's]
employment and create an abusive working environment." Faragher,
524 U.S. at 786 (quoting Meritor, 477 U.S. at 67.  That conduct is
actionable only when it "go[es] beyond the 'merely offensive' and
approach[es] tangible injury (including psychological injury)[.
F]actors to be considered include frequency, severity, whether the
conduct is 'physically threatening or humiliating,'" and whether it
"'unreasonably interferes with an employee's work performance.'"
Hernandez-Loring v. Universidad Metropolitana, 233 F.3d 49, 56 (1st
Cir. 2000) (quoting Harris, 510 U.S. at 21-23).  While there is no
"mathematically precise test" to determine when a work environment
becomes hostile, the situation "should be judged from the
perspective of a reasonable person in plaintiff's position,
considering all circumstances." Billings v. Town of Grafton, 515
F.3d 39, 48 (1st Cir. 2008).

          Plaintiff's complaint "consists essentially of
one severe incident–the telephone call to her hotel room during
which Hernandez said that he had something 'big and fat' for her
and that he wanted to steal a kiss–and an unspecified number of
non-severe incidents . . ." (Docket No. 117 at p. 17.)  Courts have
often held that a single severe incident of offensive sexual
conduct is not sufficient to create a hostile environment. See
Clark County School Dist. v. Breeden, 532 U.S. 268, 270-71 (2001).

Moreover, because plaintiff does not provide details regarding the frequency and severity of the lesser incidents, even after a third bite at the apple by filing a second amended complaint, the Court cannot gauge whether those lesser incidents might have interfered with plaintiff's work performance or caused her any psychological harm.  For these reasons, the magistrate judge recommends that plaintiff's hostile work environment claim against defendant Hernandez be dismissed.

          The Court adopts this recommendation, based both on the First Circuit six-point standard and the analysis performed by the magistrate judge.  But the Court echoes Billings v. Town of Grafton by noting its concern that the "highly fact-specific nature of hostile environment claims tends to make it difficult to draw meaningful contrasts between one case and another for purposes of distinguishing between sufficiently and insufficiently abusive behavior."  515 F.3d 39, 49 (1st Cir. 2008). "While it is easy to find more grievous episodes of harassment," there are also cases in which behavior "no worse" than that described by plaintiff in her amended complaint has been held sufficient to justify the finding of a hostile environment. Hernandez-Loring, 233 F.3d at 56 (declining to dismiss a claim alleging repeated requests for dates and the use of suggestive language by a non-supervisory co-worker).  As noted, a hostile

environment does not depend on one specific type of conduct; therefore, a plaintiff "need not be propositioned, touched offensively, or harassed by sexual innuendo in order to have been sexually harassed." Billings, 515 F.3d at 48 (quoting Quick v. Donaldson Co., 90 F.3d 1372, 1379 (8th Cir. 1996)); see Harris, 510 U.S. at 23.   The Court may look to other cases as "instructive examples of actionable sexual harassment," but simply because the allegations in plaintiff's claim are of a lesser degree does not mean they will necessarily fall short of the standard. Billings, 515 F.3d at 49.   Rather, the existence of a hostile environment depends in part on how the court characterizes the specific allegations in relation to the plaintiff. Id.   In this case, the conduct of which plaintiff complains was merely episodic, but not so frequent as to become pervasive; with one exception, never severe; mildly humiliating rather than physically threatening; and never a significant impediment to plaintiff's work performance. See Lee-Crespo v. Schering-Plough del Caribe, Inc., 354 F.3d 34, 46 (1st Cir. 2003).   Given this characterization of defendant's behavior, as well as the failure of plaintiff's claim to meet the First Circuit standard, the Court **GRANTS** defendant Hernandez's motion to dismiss plaintiff's Equal Protection clause, Law 17, Law 69, and Law 100 claims against him.

### ii. First Amendment Claim

Plaintiff objects to the magistrate judge's determination that plaintiff's First Amendment claim fails the test set forth in <u>Ramos Rivera v. Dep't. de la Familia de Puerto Rico</u>, 536 F.Supp.2d 115 (D.P.R. 2008). (Docket No. 135 at ¶ 19.) Specifically, plaintiff objects to the magistrate judge's assertion that plaintiff failed to establish part one of the first prong, to wit, that by bringing defendant Hernandez's alleged misdeeds to the attention of defendant Rodriguez she was speaking as a public citizen. (Docket No. 117 at p. 27.) Without knowing exactly what plaintiff's duties were as head of the agency's administration, the magistrate judge determines that "the most reasonable inference is that the responsibilities of the Head of Administration included keeping PRFD operations running efficiently and reporting any irregularities to PRFD Chief Rodriguez. Therefore, the most reasonable inference is that plaintiff's speech was uttered in the course of her official job duties." (Docket No. 117 at p. 27.) The Court agrees with the magistrate judge. Plaintiff's only defense is to aver that her professional responsibilities as Head of Administration "did not erode or erase her serious concern and conscious efforts to identify and complain as a citizen acts of public corruption . . ." (Docket No. 135 at ¶ 24.) This argument is unavailing. Instead of thoroughly addressing the R&R, plaintiff

Civil No. 11-1105 (FAB)                                      27

develops an argument based almost entirely on the Pickering
"balancing test," thereby ignoring over forty years of subsequent
First Amendment jurisprudence.  See Pickering v. Bd. of Educ., 391
U.S. 563 (1968).

      The Supreme Court has held that the First Amendment
protects public employees who suffer retaliation after speaking out
on matters of public concern.  See Ranking v. McPherson, 483 U.S.
378 (1987); Connick v. Meyers, 461 U.S. 138 (1983).  Nonetheless,
the Court has qualified Pickering by holding that an employee who
speaks pursuant to her official duties is acting as an employee,
not a public citizen, and therefore that her speech is not
protected under the Constitution.  Garcetti v. Ceballos, 547
U.S. 410 (2006).  In order to make out a First Amendment claim, a
plaintiff must establish three elements:  (1) that she was speaking
as a public citizen on a matter of public concern; (2) that the
plaintiff's and the public's First Amendment interests outweigh the
government's interest in promoting efficiency in the services that
it provides; and (3) that the protected speech was a "substantial
motivating factor" in the adverse employment decision.  Ramos
Rivera, 536 F.Supp.2d at 115 (internal citations omitted).

      The First Circuit Court of Appeals has developed a
two-step test to address the threshold question of whether an
employee was speaking as a public citizen or in her capacity as an

employee. <u>Decotiis v. Wittemore</u>, 635 F.3d 22, 31 (1st Cir. 2001).

First, the trial court must determine the plaintiff's official

responsibilities; second, it must decide whether the speech at

issue was made pursuant to those responsibilities. <u>Id.</u> Based on

the facts submitted in plaintiff's second amended complaint, there

is no reason to doubt that, in speaking to defendant Rodriguez

about defendant Hernandez's dealings with Fontan, plaintiff was

acting pursuant to her official duties as Head of Administration.

Moreover, plaintiff fails to make a convincing argument against

this assertion. Because plaintiff spoke as an employee of the PRFD,

her speech is not constitutionally protected. Therefore,

defendants' motion to dismiss plaintiff's First Amendment claim is

**GRANTED**.

## IV.  Conclusion

The Court has made an independent examination of the entire

record in this case, including plaintiff's objections to the R&R

and defendants' opposition to those objections, and **ADOPTS** the

magistrate judge's findings and recommendations as the opinion of

this Court.  Accordingly, defendant Hernandez's motion to dismiss

is **GRANTED**.  Defendants Rodriguez, Commonwealth and PRFD's motion

to dismiss is **GRANTED IN PART AND DENIED IN PART**.  The motion to

dismiss is **DENIED** as to plaintiff's claims against defendants

Commonwealth and PRFD under Title VII, and plaintiff's claims

against defendant Rodriguez under Law 115 and Law 426.  Finally,

defendant Rodriguez's motion for qualified immunity is deemed **MOOT.**

      **IT IS SO ORDERED.**

San Juan, Puerto Rico, June 8, 2012.

<u>s/ Francisco A. Besosa</u>
FRANCISCO A. BESOSA
UNITED STATES DISTRICT JUDGE